COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

FRANCISCO GARCIA,
Individually and as          )

Next Friend of FRANCISCO
GARCIA, JR.         )

and KEVIN GARCIA, Minor
Children,                 )             
No.  08-04-00179-CV

                                                                              )

Appellants,                         )                 Appeal from the

                                                                              )

v.                                                                           )              
120th District Court

                                                                              )

J.J.S. ENTERPRISES, INC.
d/b/a PDQ                )          
of El Paso County, Texas

DRIVE-IN GROCERY,                                        )

                                                                              )               
(TC# 2002-5149)

Appellee.                           )

                                                                              )

 

 

O
P I N I O N

 

Appellants
Francisco Garcia, Individually and as Next Friend of Francisco Garcia, Jr. and
Kevin Garcia (collectively Athe
Garcias@) are the
surviving spouse and children of Rosario Michelle Garcia, who tragically died
during the course of a robbery at a convenience store owned and operated by her
employer Appellee J.J.S. Enterprises, Inc. d/b/a PDQ Drive-In Grocery (AJ.J.S. Enterprises@). 
By four points of error, the Garcias challenge the trial court=s granting of summary judgment in favor
of J.J.S. Enterprises.  For the reasons
stated below, we must affirm.








In November 2000,
Mrs. Garcia was working as a cashier at the PDQ Drive-In Grocery store in
Anthony, Texas.  Mrs. Garcia had been
working at the store for almost three months. 
According to the affidavit of owner James J. Stewart, Mrs. Garcia had
been trained on store policies concerning how to deal with shoplifting,
robbery, theft, or a hold-up and was also provided this information through the
company=s
employee handbook and handbook on workplace safety.  Mr. Stewart attested that he explained to
Mrs. Garcia that in the event of such criminal conduct, the store policy was
that the employee was to fully cooperate with the robber, to never try to fight
back or resist a robber=s
request or command, and to call the police after the robber left the
store.  Specifically, he stated that he
explained to her that she was never to try to stop a thief or shoplifter
personally, but rather the store policy was to allow that individual to leave
the premises and then call the police and give them whatever descriptive
information the employee has acquired.[1]








On November 10,
2000, Loraine Urquidi and her high school friends had ditched school and had
been partying and drinking beer throughout the day.  When they ran out of beer, they decided to
steal some beer from a store or do a Abeer
run.@  Around two o=clock
that afternoon, Urquidi and friends drove in a pickup truck to the PDQ
store.  Urquidi walked into the store,
grabbed an 18-pack of beer, and walked toward the counter as if she was going
to pay for the beer, but then quickly walked out of the store.  Urquidi threw the beer into the back of the
waiting truck, and then hopped into the passenger side seat.  

Witnesses saw Mrs.
Garcia and Jack Stewart, the store manager and owner=s
son, run out of the store following after Urquidi.[2]  Mrs. Garcia ran to the driver=s side door and grabbed the door handle
as the truck started to move.  The driver
accelerated at a high rate of speed and drove forward with Mrs. Garcia hanging
onto the handle.  When Mrs. Garcia lost
her grip, she fell beneath the vehicle and was run over by the rear driver side
dual tires.  Mrs. Garcia died from her
injuries.








The Garcias
brought a wrongful death suit against J.J.S. Enterprises in which they alleged
 J.J.S. Enterprises was negligent in
its exercise of control over Mrs. Garcia and/or its enforcement or non-enforcement
of company policies at the time of the incident and that this negligence was
the proximate cause of her death.[3]  J.J.S. Enterprises moved for traditional and
no-evidence summary judgment on grounds that it was not liable as a matter of
law because the  event was not
foreseeable and alternatively, there was no evidence that the event was
foreseeable nor evidence that J.J.S. Enterprises=
conduct was the proximate cause of her death. 
In a supplemental summary judgment motion, J.J.S. Enterprises also
asserted that the Garcias were barred from pursuing the lawsuit because Mrs.
Garcia had waived her right to sue J.J.S. Enterprises by executing a pre-injury
waiver in exchange for acceptance of benefits provided by the company=s employee welfare benefit plan.  After a hearing, the trial court granted
summary judgment in favor of J.J.S. Enterprises, without stating the grounds
for its ruling.  The Garcias now bring
this appeal.

Standards
of Review








J.J.S. Enterprises
filed a hybrid summary judgment motion and a supplemental summary judgment
motion, in which it raised both traditional and no-evidence points.  See Tex.R.Civ.P.
166a(c), 166a(i).  The standards for
reviewing traditional and no-evidence summary judgment rulings are
well-established.  The movant for
traditional summary judgment has the burden of showing there is no genuine
issue of material fact and that it is entitled to judgment as a matter of
law.  See Tex.R.Civ.P. 166a(c); Nixon v. Mr. Property Management
Co., Inc., 690 S.W.2d 546, 548-49 (Tex. 1985); Duran v. Furr=s Supermarkets, Inc., 921 S.W.2d
778, 784 (Tex.App.--El Paso 1996, writ denied).  When a defendant is the movant for summary
judgment, it must either disprove at least one element of the plaintiff=s theory of recovery or conclusively
establish all essential elements of an affirmative defense.  Sci. Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997); City of Houston v. Clear Creek Basin Authority,
589 S.W.2d 671, 678-79 (Tex. 1979).  Once
the defendant establishes its right to summary judgment as a matter of law, the
burden shifts to the plaintiff to present evidence raising a genuine issue of
material fact, thereby precluding summary judgment.  City of Houston, 589 S.W.2d at
678-79.  In determining whether there is
a disputed material fact issue precluding summary judgment, all evidence
favorable to the non-movant must be taken as true and all reasonable inference,
including any doubts, must be resolved in the non-movant=s
favor.  Nixon, 690 S.W.2d at
548-49; DeLuna v. Guynes Printing Co. Of Texas, Inc., 884 S.W.2d 206,
208 (Tex.App.--El Paso 1994, writ denied).

A no‑evidence
summary judgment under Rule 166a(i) is essentially a pretrial directed verdict
and as such, we apply the same legal sufficiency standard in reviewing a no‑evidence
summary judgment as we apply in reviewing a directed verdict.  Wyatt v. Longoria, 33 S.W.3d 26, 31
(Tex.App.‑-El Paso 2000, no pet.). 
The party moving for no‑evidence summary judgment must assert that
there is no evidence of one or more essential elements of a claim or defense on
which the non-movant would have the burden of proof at trial.  See Tex.R.Civ.P.
166a(i).  The burden then shifts to the
non‑movant to produce evidence raising a fact issue on the challenged
elements.  See id.  To raise a genuine issue of material fact,
the non‑movant must set forth more than a scintilla of probative evidence
as to an essential element of the non‑movant=s
claim or defense.  See id.; Merrell
Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997), cert.
denied, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).  More than a scintilla of evidence exists when
the evidence A>rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions.=@  Havner, 953 S.W.2d at 711.  Less than a scintilla of evidence exists when
the evidence is Aso weak
as to do no more than create a mere surmise or suspicion@
of the existence of a fact, and the legal effect is that there is no
evidence.  Kindred v. Con/Chem, Inc.,
650 S.W.2d 61, 63 (Tex. 1983).  As with a
traditional summary judgment, we view the evidence in the light most favorable
to the non‑movant, disregarding all contrary evidence and
inferences.  See Havner, 953
S.W.2d at 711.








Where the trial
court has granted summary judgment without specifying the ground or grounds
relied on for the ruling, summary judgment will be affirmed on appeal if any of
the theories advanced are meritorious.  See
State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993); Rogers
v. Ricane Enter., Inc., 772 S.W.2d 76, 79 (Tex. 1989).

Waiver

In its
supplemental motion, J.J.S. Enterprises asserted that the pre-injury waiver
executed by Mrs. Garcia barred the Garcias from pursuing their negligence
lawsuit.  In their response and on
appeal, the Garcias contend that the pre-injury waiver is void because it is
against public policy, and alternatively, it is unenforceable because it fails
to meet the test of Express Negligence and Fair Notice.  Though we find merit in the first two points
of error, we have concluded that the waiver issue is dispositive.

Uncontroverted
summary judgment evidence shows that Mrs. Garcia elected to participate in her
employer=s
Occupational Accident Employee Welfare Benefit Plan (the APlan@)
at the start of her employment on August 16, 2000.  On that date, Mrs. Garcia signed the
following document:








As a result of the Company not having
workers=
compensation insurance coverage, you may have certain rights under the common
laws of Texas for damages arising out of work-related illness or injury.  If, however, you chose to participate in the
Company=s
Occupational Accident [E]mployee Welfare Benefit Plan by requesting the
benefits provided by the Plan, you hereby agree to accept the Plan benefits as
the only benefits you are entitled to receive in the event of a work-related
injury and to waive any and all other causes of action, claims, rights, and
demands that you could make against the Company, its successors, assigns,
employees, officers, directors, shareholders, agents and clients.  Participation in the Company=s Occupational Accident Employee
Welfare Benefit Plan is not compulsory for employees of the Company, and the
Company is not required by any law or regulation to make available the level of
benefits provided by this Plan.  The Plan
is administered by a Plan Administrator in accordance with the policies and
procedures described in the Plan=s
legal documents which govern eligibility, benefits, limitations, and exclusions.  Payments made according to the terms of this
Plan do not constitute admission of liability on the part of the Company nor do
they toll any applicable statute of limitations governing actions by employees
against employees.

 

By executing this Agreement, you hereby
acknowledge that the Company=s
Occupational Accident Employee Welfare Benefit Plan, as explained herein and in
the Plan=s legal
documents, is voluntary on the part of the Company and is not fringe benefit,
but that is instead a program offered at the discretion of the Company and is
designated to provide benefits for the injured employee and to protect the
interest of the Company.  Further, by
executing this agreement, and in consideration your participation in the
Company=s
Occupational Accident Employee Welfare Benefit Plan, you hereby agree that all
funds received by you under the terms of this Plan will insure to or be to the
advantage of and for the benefit of the Company in the event of
litigation.  If a third party may be
liable for an injury to you in your status as an employee of the Company and
you may have rights of recovery for damages, by your execution of this
Agreement, you do hereby agree to execute an assignment of rights document for
the purpose of allowing the Company to recover any payments it may have made to
you or on your behalf in connection with the injury.

 

By my signature below, I acknowledge
that this non-subscriber program has been explained to me and that I was given
the opportunity to ask questions, have my questions answered, and to make
comments.  It was further explained to me
that my employment and/or continued employment was not conditional upon he
[sic] execution of this Agreement, but that by my execution of this Agreement I
am agreeing to comply with the terms of the Plan and this Agreement.  I understand that participation in the Plan
is not Compulsory, and understanding that, I hereby agree to participate in the
Plan and to recover the benefits provided to me by the Company through this
Occupational Accident Employee Welfare Benefit Plan.  I also understand that, by executing this Agreement,
I have waived certain claims and rights as stated herein.

 








In an
uncontroverted affidavit, James J. Stewart attested that upon hiring Mrs.
Garcia, he explained to her that by her acceptance of the Plan, it would be Athe sole and exclusive remedy she would
be entitled to receive from the company in the event of any work-related injury
or death.@  Mr. Stewart stated that he also explained
that since the company was a Anon-subscriber@ to the Texas workers= compensation insurance coverage
scheme, by accepting the Plan, Ashe
would be waiving any of her common-law rights to bring a lawsuit against PDQ in
the event she was injured or was killed on the job.@  According to Mr. Stewart, Mrs. Garcia
expressed to him that:  (1) she
understood the rights she was waiving and wanted to do so in order to obtain
Plan benefits; and (2) she understood that her participation in the Plan was
not compulsory and that she was free to decline to participate if she wanted to
preserve the rights of her or her beneficiaries to bring a lawsuit against the
company in the event she was injured or killed in the future.  It is undisputed that the Garcias received a
life insurance payment in the amount of $107,120, an accidental death benefit
under the Plan.








The Garcias
contend that the pre-injury waiver Mrs. Garcia executed is void because it is
against public policy in Texas.  We first
observe that Mrs. Garcia executed the waiver on August 16, 2000 and
suffered her fatal injury on November 10, 2000. 
In 2001, the Texas Legislature amended Section 406.033 of the Texas
Labor Code to provide that an employee may not waive a cause of action against
a non-subscribing employer for an injury sustained in the course and scope of
employment before the employee=s
injury or death and that any such agreement is void and unenforceable.  See Tex.Lab.Code
Ann. ''
406.033(e), 401.002 (Vernon  Supp.
2004-05).  The effective date of the amendment
was June 17, 2001.  See Acts of
2001, 77th Leg. R.S., ch. 1456, '
16.01, 2001 Tex.Gen.Laws
5196.  Prior to the amendment prohibiting
pre-injury waivers, the Texas Supreme Court in Lawrence v. CDB Servs., Inc.,
44 S.W.3d 544 (Tex. 2001) had held that an employee=s
voluntary pre-injury election to participate in a non-subscribing employer=s benefit plan in lieu of his or her
common law remedies against the employer for work-related injuries was not
prohibited by law and was not against public policy.  Lawrence, 44 S.W.3d at 550-53.  In light of the amendment, the Texas Supreme
Court in Storage & Processors, Inc. v. Reyes, 134 S.W.3d 190, 192
(Tex. 2004), clarified that its decision in Lawrence remains the law for
claims brought by workers who have both signed non-subscriber agreements and
suffered injury before the effective date of the amendment, that is, June 17,
2001.  See Reyes, 134 S.W.3d at
192; Villareal v. Steve=s
and Sons Doors, Inc., 139 S.W.3d 352, 354 (Tex.App.--San Antonio 2004, no
pet.)(noting the typographical error in the applicable effective date in Reyes).








The Garcias do not
dispute that Lawrence governs this case. 
Rather, they assert that the waiver in this case is significantly unlike
the release agreements at issue in Lawrence.  Specifically, the Garcias argue that the
release agreements in Lawrence were held not to violate public policy
because they had Avery
clear >releasing= language, set out in bold@ and were Aclearly
entered into by the employees voluntarily . . . .@  However, we find that the Garcias= reliance on Lawrence in this
regard is misplaced.  The Court=s determination that such agreements
were not void on public policy grounds did not turn on the inclusion of all the
particular representations contained within the release agreements in that
case.  See Lawrence, 44 S.W.3d at
553 (AGiven the
lack of any clear legislative intent to prohibit agreements like the ones
before us, and absent any claim by the petitioners of fraud, duress, accident, mistake,
or failure or inadequacy of consideration, we decline to declare them void on
public policy grounds.@).   Although the Court did give special import
to the voluntariness of the employee=s
election and the fact that the release agreements at issue were not made a
condition of employment, such considerations do not effect the outcome in this
case because the uncontroverted summary judgment evidence establishes that Mrs.
Garcia=s
pre-injury waiver was both voluntary and was expressly not made a condition of
her employment.  See Lawrence, 44
S.W.3d at 549-50.  Therefore, Lawrence
provides no support of the Garcias contention that the pre-injury waiver is
void on public policy grounds.

Alternatively, the
Garcias argue that the pre-injury waiver failed to meet the express-negligence
and fair-notice tests and therefore, is unenforceable.  Under Texas contract law, there are two fair
notice requirements for release agreements: 
(1) the express negligence doctrine and (2) the conspicuousness
requirement.  See Reyes, 134
S.W.3d at 192; Dresser Indus., Inc. v. Page Petroleum, Inc., 853 S.W.2d
505, 509 (Tex. 1993).  The express
negligence doctrine requires that a party=s
intent to be released from the consequences of that party=s own negligence, must express that
intent in specific terms within the four corners of the contract.  See Fisk Elec. Co. v. Constructors &
Assoc., Inc., 888 S.W.2d 813, 814 (Tex. 1994); Ethyl Corp. v. Daniel
Constr. Co., 725 S.W.2d 705, 708 (Tex. 1987).  Second, the releasing language must be
conspicuously written, such that a reasonable person against whom it is to
operate ought to have noticed it.  See
Dresser, 853 S.W.2d at 511.  For
example, language that appears in contrasting type or color, in capitals, or
otherwise calls attention to itself satisfies the conspicuous requirement.  See Reyes, 134 S.W.3d at 192, citing
Littlefield v. Schaefer, 955 S.W.2d 272, 274-75 (Tex. 1997); Dresser,
853 S.W.2d at 511; see also Tex.Bus.&Com.Code
Ann. '
1.201(10)(Vernon Supp. 2004-05). 
However, if both contracting parties have actual knowledge of the
agreement, it can be enforced even if the fair notice requirements were not
satisfied.  Reyes, 134 S.W.3d at
192; Dresser, 853 S.W.2d at 508 n.2, citing Cate v. Dover Corp.,
790 S.W.2d 559, 561 (Tex. 1990). 








On appeal, J.J.S.
Enterprises argues that Mrs. Garcia=s
pre-injury waiver satisfied the fair notice requirements.  Further, it asserts that its summary judgment
evidence established as a matter of law that both contracting parties had
actual knowledge of the Plan=s
terms, including the waiver provision, therefore the agreement is enforceable
even if the fair notice requirements were not met.  The burden of establishing actual knowledge
fell on J.J.S. Enterprises.  See
Missouri Pacific R.R. Co. v. Lely Development Corp., 86 S.W.3d 787, 791
(Tex.App.--Austin 2002, pet. dism=d)(The
party seeking indemnification has the burden of establishing actual notice or
knowledge).  In its supplemental motion,
J.J.S. Enterprises asserted that Mr. Stewart=s
affidavit established that Mrs. Garcia was fully aware of the rights and
potential future claims and causes of action she was waiving at the time she
signed the pre-injury waiver agreement. 
Mr. Stewart offered uncontroverted affidavit testimony that upon hiring
Mrs. Garcia, he explained to her that she would be waiving any common-law
rights to bring a lawsuit against the company in the event she was injured or
killed on the job and, according to Mr. Stewart, she understood the rights she
was waiving and wanted to do so in order to participate in the company=s benefit plan.  We must agree that J.J.S. Enterprises
established that Mrs. Garcia had actual knowledge of the parties= agreement and therefore, as a matter
of law, it is enforceable.  Because the
pre-injury waiver is valid, the Garcias are barred from bringing the underlying
lawsuit under the terms of that agreement. 
Points of Error Three and Four are overruled.

As previously
noted, when the trial court has granted summary judgment without specifying the
ground or grounds relied on for the ruling, summary judgment will be affirmed
on appeal if any of the theories advanced are meritorious.  See State Farm Fire & Cas. Co., 858
S.W.2d at 380; Rogers, 772 S.W.2d at 79. 
Since the trial court=s
ruling can be affirmed on the ground that the pre-injury waiver barred the
Garcias=
negligence claims and cause of action as a matter of law, there is no purpose
to be served by considering the Appellants=
first two points of error.








We affirm the
trial court=s
judgment.

 

August
25, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.











[1]
In the company=s
handbook, the following instruction on shoplifting was provided to employees: 

 

THE MOST COSTLY PROBLEM FACING TODAY=S
MERCHANTS IS CUSTOMER AND EMPLOYEE THEFT. 
EVERY YEAR BILLIONS OF DOLLARS ARE LOST TO THIS CRIME.  WHEN AN EMPLOYEE WITNESSES A THEFT HE SHOULD
IMMEDIATELY NOTIFY THE PERSON IN CHARGE. 
KEEP THE SHOPLIFTER IN SIGHT.  WE
MUST KNOW THE ITEM TAKEN IS STILL ON HIS PERSON AND NOT PAID FOR WHEN HE GOES
OUT THROUGH THE DOOR.  THIS IS A VERY
SERIOUS MATTER AND MUST BE HANDLED WITH EXTREME CAUTION.  TO ACCUSE A CUSTOMER BECAUSE YOU THINK HE HAS
TAKEN SOMETHING COULD CREATE A VERY SERIOUS SITUATION.  THIEVES COME IN ALL SHAPES, FORMS, AND
AGES--WATCH EVERYONE ALWAYS.  IT IS BEST
TO CALL THE POLICE IN CASES OF SHOPLIFTING. 
WHEN VERY SMALL CHILDREN ARE INVOLVED, CALL THEIR PARENTS.





[2]
There was conflicting summary judgment evidence as to whether Mrs. Garcia and
Jack Stewart ran out together or whether Mrs. Garcia ran out of the store first
or second.  According to Jack Stewart, he
saw Mrs. Garcia run out the door and followed behind her.  He stated that he did not know the girl she
was chasing was a shoplifter until he saw the girl throw the beer into the
truck.





[3]
The Garcias also brought negligence claims against the driver, Ruben Rivas, Jr.
and the owners of the truck, his uncle Juan Diego Rivas, and his father Ruben
Rivas d/b/a JYR Enterprises.  These
defendants were non-suited without prejudice on June 17, 2004 and are not
parties to this appeal.