**STORAGE & PROCESSORS, INC. and Leonel Guerrero, Petitioners,**

v.

**Ramon REYES, Respondent.**

No. 02–1008.

Supreme Court of Texas.

Argued Oct. 29, 2003.

Decided April 2, 2004.

Rehearing Denied June 11, 2004.

Randall L. Brim, Robert H. Singleton Jr., Singleton Cooksey & Hanson LLP, Houston, for petitioners.

Carl Dudensing, Pusch, Lowery & Gilcrease, L.L.P., Jerry A. Pusch, Pusch, Lowery & Gilcrease, Robert S. Wicoff, Law Office of Bob Wicoff, Houston, for respondent.

Chief Justice PHILLIPS delivered the opinion of the Court.

In this case, we must decide whether an employer must satisfy the fair notice requirements of the express negligence doctrine and conspicuousness when it enrolls employees in a non-subscriber workers' compensation benefits plan. Because we hold that employers must, we affirm the judgment of the court of appeals. 86 S.W.3d 344.

Storage & Processors, Inc. (S & P) is a non-subscriber to the Texas Workers' Compensation Act. TEX. LAB.CODE § 401.001. On October 22, 1993, Ramon Reyes signed up for a benefits program ("the plan") offered by S & P to provide him with medical care and wage continuation benefits if he were injured on the job. Reyes did sustain such an injury on April 13, 1995, when S & P's employee, Leonel Guerrero, drove over and severed Reyes' foot with a forklift. After accepting almost all available benefits under the plan, Reyes sued S & P and Guerrero for negligence.

S & P and Guerrero both moved for summary judgment, arguing that Reyes waived his common-law right to sue by accepting the benefits plan and that he ratified that waiver by accepting payments under the plan. The trial court agreed and granted the motion. The court of appeals reversed, holding that the plan violated public policy and thwarted the legislative intent of allowing employers to limit their liability only if they provided subscriber-level benefits. *Reyes v. Storage & Processors, Inc.*, 995 S.W.2d 722 (Tex.App.-San Antonio 1999, pet. denied). The case was still pending in the trial court on remand when this Court held that agreements by workers to limit employers' liability in exchange for non-subscriber benefits plans were not prohibited by law. *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 551–53 (Tex.2001). After we decided *Lawrence,* S & P and Guerrero filed a second motion for summary judgment, which again the trial court granted.

On appeal, Reyes argued that he had been induced to sign the release by fraud, misrepresentation, or mistake. The court of appeals refused to consider these points because Reyes had not raised them in the

trial court. 86 S.W.3d at 348. Reyes also contended that the liability release in the plan did not satisfy the two fair notice requirements of the express negligence doctrine and conspicuousness. *Id.* The court of appeals agreed with these arguments, reversing the judgment of the trial court and remanding the case for trial. *Id.* at 349. S & P and Guerrero then petitioned this Court for review.

■ A contract which fails to satisfy either of the fair notice requirements when they are imposed is unenforceable as a matter of law. *See Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 509–10 (Tex.1993); *see also U.S. Rentals, Inc. v. Mundy Serv. Corp.,* 901 S.W.2d 789, 792 (Tex.App.-Houston [14th Dist.] 1995, writ denied). One fair notice requirement, the express negligence doctrine, requires that "the intent of the parties must be specifically stated in the four corners of the contract." *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 707 (Tex. 1987).[1] The other requirement, of conspicuousness, mandates "that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Dresser,* 853 S.W.2d at 508 (quoting *Ling & Co. v. Trinity Sav. & Loan Ass'n,* 482 S.W.2d 841, 843 (Tex.1972)). Language may satisfy the conspicuousness requirement by appearing in larger type, contrasting colors, or otherwise calling attention to itself. *Littlefield v. Schaefer,* 955 S.W.2d 272, 274–75 (Tex.1997). However, if both contracting parties have actual knowledge of

the plan's terms, an agreement can be enforced even if the fair notice requirements were not satisfied. *Dresser,* 853 S.W.2d at 508 n. 2 (citing *Cate v. Dover Corp.,* 790 S.W.2d 559, 561 (Tex.1990)).

■ Both parties concede that our decision in *Lawrence* governs this case. Although the Legislature ten weeks later amended the Labor Code to prohibit pre-injury waivers, Tex. Lab.Code § 406.033(e), *Lawrence* remains the law for those claims, like Reyes', brought by workers who both signed non-subscriber agreements and suffered injury before September 1, 2001. But the parties disagree about whether *Lawrence* requires the fair notice requirements to be applied to non-subscriber plans. Reyes emphasizes that this Court in *Lawrence* conducted a fair notice analysis in a separate section of the opinion after we held that public policy did not automatically void such waivers. In *Lawrence,* indeed, we stated that "[the worker's] pre-injury release of claims ... can be enforced only if it meets two fair notice requirements." *Lawrence,* 44 S.W.3d at 553. After discussing the fair notice requirements in *Lawrence,* we concluded that "[the employer's] election meets both the express-negligence and fair-notice requirements." *Id.* at 554.

S & P and Guerrero dismiss this analysis as dicta. *Lawrence,* they say, did not actually hold that the requirements always apply to non-subscriber agreements, and the Court states elsewhere in its opinion that such agreements do not shift the risk of on-the-job injuries. *Id.* at 550.

---

1. For many years, Texas followed the rule that "an indemnity agreement will not protect the indemnitee against the consequences of his own negligence unless the obligation is expressed in unequivocal terms," *Joe Adams & Son v. McCann Const. Co.,* 475 S.W.2d 721, 723 (Tex.1971), even though our courts did not "follow the refinement of the rule which requires that the agreement, in order to effec-

tually embrace the negligence of the indemnitee, should expressly so state." *Id.* at 724 (quoting *Spence & Howe Constr. Co. v. Gulf Oil Corp.,* 365 S.W.2d 631, 634 (Tex.1963)); *see also Ohio Oil Co. v. Smith,* 365 S.W.2d 621, 624 (Tex.1963); *Mitchell's, Inc. v. Friedman,* 157 Tex. 424, 303 S.W.2d 775, 779 (1957).

It is true that we were not squarely confronted with the fair notice requirements' application in *Lawrence*. There, the employer conceded application of the fair notice requirements, arguing only that the agreement satisfied both requirements. Without analysis of why the fair notice requirements actually applied, we applied them and found they were satisfied.

In this case, S & P and Guerrero do contest the applicability of the fair notice requirements. Whether or not *Lawrence* decided the issue, it is now squarely before us. S & P and Guerrero say that applying these requirements would conflict with *Lawrence's* disapproval of courts basing their decision on how benefits under a particular plan might compare with those available under workers' compensation. *Id.* at 551. But requiring all non-subscriber plans to satisfy the fair notice requirements would not require judicial comparison of benefits, merely judicial evaluation of the legality of the agreements.

S & P and Guerrero also claim that, even if *Lawrence* suggests otherwise, the fair notice requirements should not apply here because the risk shifting in non-subscriber benefit plans is not as complete or extraordinary as the few other contracts to which we apply those requirements. This Court, they point out, has never applied the fair notice requirements to anything other than an extraordinary shifting of risk, such as indemnifying a party from the consequences of its own negligence, *Ethyl Corp.*, 725 S.W.2d at 707, or releasing "a party in advance of liability for its own negligence." *Dresser*, 853 S.W.2d at 507. Short of such circumstances, we have resisted expanding the fair notice requirements. *See Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 387 (Tex.1997) (fair notice requirements not applicable to no-damages-for-delay clause); *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 806 (Tex.1992)

(express negligence doctrine not applicable to insurance-shifting agreement).

To apply the doctrine to an agreement which does anything less than totally exculpate a party of the consequences of its own negligence, S & P and Guerrero argue, would radically expand the doctrine. As one court recently opined, "[t]he express negligence doctrine is inapplicable [to a non-subscriber benefits plan] because neither the benefit agreement nor the arbitration agreement contained therein attempts to relieve [the employer] of the consequences of its negligence. To the contrary, [the employee's] 'waiver' and 'release' obligated [the employer] to pay plan benefits regardless of its negligence." *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 378 (Tex.App.-Houston [14th Dist.] 2000).

■ We recognize that waivers of liability signed in exchange for non-subscriber plans do not involve the same extraordinary risk-shifting as releases and indemnity agreements. Indeed, such plans provide immediate and certain benefits to injured workers. *Lawrence*, 44 S.W.3d at 550. But the law has long accorded special status and given special protection to workers, just as this Court did in *Lawrence* when we assured ourselves that the agreement satisfied the express negligence doctrine and that the releasing language was conspicuous. *Id.* at 553–54. Thus, workers' compensation settlements are one of the very few types of settlements that require administrative approval. *See* Tex. Lab.Code § 408.005(d), (e) (requiring the approval of the director of the division of hearings for all settlements).

Moreover, workers' compensation is a strong public policy in Texas and indeed in all fifty states. The Legislature has made clear its preference for a quick and fair system to compensate injured workers. The Legislature's prompt amendment of

the Labor Code after *Lawrence* pointedly reinforces that legislative intent. Permitting companies to induce their employees to sign up for something other than subscriber-level benefits without a guarantee that the workers understand the plan they are accepting would substantially undercut the public policy behind the compensation system. Thus, while this plan may not represent the same extraordinary degree of risk-shifting as an indemnity agreement, the expressed and reiterated public policy of this state justifies our imposing the fair notice requirements.

In requiring that nonsubscriber agreements satisfy the fair notice requirements, we reiterate that this is a limited extension of those two doctrines because of the unique status of such agreements under our law. To the extent that the court of appeals suggested that the fair notice requirements apply to a contract that shifts *any* degree of risk, we disapprove of that court's opinion. The fair notice requirements have traditionally applied to extraordinary risk shifting, *Green Int'l*, 951 S.W.2d at 387, and we only expand those requirements to admittedly less than total risk shifting because of workers' compensation's unique public policy posture.

S & P and Guerrero have conceded that, if the conspicuousness requirement applies, the waivers Reyes signed did not meet it. *See Dresser*, 853 S.W.2d at 508. However, a disputed fact question remains whether Reyes had actual knowledge of the terms of the plan. S & P produced an affidavit from its orientation supervisor stating that she is fluent in English and Spanish and that she reviewed the plan and liability waiver in Spanish with Reyes, after which he signed a form which recited the plan's details. In response, Reyes averred that he can neither read nor write English, that he never received an explanation of the plan in

Spanish or English, and that S & P never provided him any paperwork written in Spanish. Because actual knowledge is an affirmative defense that the defendants must prove, *Dresser*, 853 S.W.2d at 508 n. 2 (citing *Cate*, 790 S.W.2d at 561), a disputed fact question exists on this issue.

For these reasons, we affirm the court of appeals' judgment, remanding this case to the trial court for further proceedings.

Justice SCHNEIDER filed a concurring opinion.

Justice SCHNEIDER, concurring.

I fully agree with the Court that an employer must satisfy the fair notice requirements of the express-negligence doctrine and conspicuousness when it enrolls employees in a non-subscriber workers' compensation benefits plan.

But I write separately to note that there is an additional reason why the fair notice requirements should apply to all nonsubscriber agreements. Workers entering into these agreements are uniformly less sophisticated than the employers who draft them. It is unlikely that many workers are even aware of what exactly they are giving up by agreeing that they can neither sue their employer nor receive subscriber-level benefits in the event they are injured. Reyes is a prime example. A non-English speaker, he allegedly received a summary of the plan in Spanish, but the contract that he signed was in English. Moreover, it is undisputed that the waiver was not conspicuous.

Of course, not all contracts between sophisticated and unsophisticated parties must meet the fair notice requirements. But, because non-subscriber worker's compensation plans are exclusively drafted by more sophisticated parties and offered to less sophisticated parties, there is a strong public policy justification to require those

agreements to meet both requirements. Accordingly, I join the Court's opinion and concur in its judgment.