**Rosemary SYDLIK, Appellant,**

v.

**REEIII, INC. d/b/a Curves for Women, Curves International, Inc., and Ecological Services International, Inc., Appellees.**

**No. 14–04–01080–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

May 18, 2006.

---

Timothy A. Hootman, Houston, for appellant.

Spencer Edwards, Michael D. Hudgins, Houston, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and GUZMAN.

## OPINION

WANDA McKEE FOWLER, Justice.

Appellant, Rosemary Sydlik, sued appellees, REEIII, Inc. d/b/a Curves for Women, Curves International Inc., and Ecological Services International, Inc., (collectively, "appellees"), for injuries arising out of her use of appellees' weight-training equipment. Appellees moved for summary judgment relying on a pre-injury release. The trial court granted the motion as to all three. Sydlik appeals the grant of summary judgment. We affirm as to REEIII, Inc. and Curves International, Inc. and reverse and remand as to Ecological Services International, Inc. because Ecological Services was not mentioned in the release and therefore it cannot avail itself of the release's protections.

### Factual and Procedural Background

We set out the facts in the light most favorable to Sydlik, as she was the non-movant below. On February 17, 2003, Sydlik transferred an existing Curves membership to the club location at issue in this case. As part of that membership transfer, Sydlik signed a general release, the relevant parts of which are set forth below.

> In consideration of being allowed to participate in the activities and programs of Curves for Women® and to use its facilities, equipment and machinery in addition to the payment of any fee or charge, I do hereby waive, release and forever discharge Curves International Inc., Curves for Women®, and their officers, agents, employees, representatives, executors, and all others (Curves® representatives) from any and all responsibilities, or liabilities, from injuries or damages arriving [sic] out of or connected with my attendance at Curves for Women®, my participation in all activities, my use of equipment or machinery,

or any act or omission, including negligence by Curves® representatives.

In June 2003, Sydlik injured herself while using a shoulder press/lat pull machine. She sued REEIII, Inc. d/b/a Curves for Women ("the Club" where the injury took place), Curves International, Inc. ("the Designer" of the machine), and Ecological Services International, Inc. ("the Manufacturer" of the machine). Her lawsuit against all was based on negligence, premises liability, and manufacturing and design defects. All of these claims are based in negligence.

Relying on the release, appellees moved for summary judgment to dismiss all claims against them. The trial court granted the motion for all three and rendered a final judgment in their favor. Sydlik timely filed this appeal urging us to reverse the trial court as to each of the appellees. We affirm as to the Club and the Designer, but reverse the trial court's judgment in favor of the Manufacturer because it was not mentioned in the release.

## Analysis

### I. Standard of Review

To prevail on a motion for summary judgment, the movant must show that there is no genuine issue of material fact and that she is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002). If the movant conclusively negates at least one essential element of the cause of action, then she is entitled to summary judgment on that claim. *Grant*, 73 S.W.3d at 215. When we review a summary judgment, we take as true all evidence favorable to the non-movant; we also indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Id.* Because we are reviewing a

legal determination, we give the trial court no deference.

### II. Pre–Injury Releases

Initially, we must determine whether the pre-injury release is effective. If it is not, then we must reverse as to all three appellees. If it is effective, then we must determine what parties and subject matter are protected by its protective language.

In assessing the effectiveness of the release, we must turn to the doctrine of fair notice and determine if the release complied with its requirements. If the release failed to comply with either of fair notice's two requirements—conspicuousness and express negligence—then it is ineffective to the extent specific parties or subject matter is not conspicuously and expressly listed.

### A. Fair Notice

■ A pre-injury release is a risk-shifting contractual agreement. As such, it must satisfy the fair notice doctrine. *See DDD Energy, Inc. v. Veritas DGC Land, Inc.*, 60 S.W.3d 880, 883 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *see also Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 507 (Tex.1993) (stating that fair notice requirements apply to releases). Those requirements are: (1) the conspicuousness requirement, and (2) the express negligence test. *DDD Energy*, 60 S.W.3d at 883. If a release does not satisfy both of the fair notice requirements, then it is unenforceable. Thus, fair notice is the chief test we must apply, and conspicuousness and express negligence are merely the two prongs of that test.

### 1. Conspicuousness

■ To be conspicuous, something must appear on the face of the contract to attract the attention of a reasonable person when he looks at it. *Dresser*, 853 S.W.2d at 508. However, that require-

ment is not necessary when the indemnitor—here, Sydlik—possessed actual notice or knowledge of the indemnity agreement. *Id.* at 508 n. 2. Stated differently, actual notice may serve as a substitute for the conspicuousness prong of the fair notice doctrine. In this case, both conspicuousness and actual notice are present.

■ The document is only one page with only three paragraphs. It states in large, bolded, underlined letters at the top of the page that it is an agreement and a release. Additionally, Sydlik initialed each paragraph. It was conspicuous. *See generally Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 20 S.W.3d 119, 126 (Tex. App.-Houston [14th Dist.] 2000, pet. denied) (holding that an indemnity agreement less than two and one-half pages, containing eight paragraphs, referenced in two other paragraphs, which the party read, was conspicuous).

Additionally, Sydlik admitted in her deposition she had actual notice of the release. Utilizing either the conspicuousness requirement or actual notice, this prong of the fair notice doctrine is satisfied.

### 2. Express Negligence

■ The supreme court established the express negligence test to cut through the ambiguity of indemnity agreements. *Dresser*, 853 S.W.2d at 507. Parties seeking to indemnify themselves from their own negligence must express that intent in specific terms. *Id.* Provisions that do not express the parties' intent within the four corners of the document are unenforceable as a matter of law. *Id.* The provision is either clear and enforceable or it is not. *Id.* Another formulation of the rule is that the provision must "mention" the claim to be released. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex.1991). Any claims not clearly within the release's subject matter are not released. *Id.* Addi-

tionally, we narrowly construe general categorical release clauses. *Id.*

### a. Actual Notice is Not a Substitute for Express Negligence

Appellees note that Sydlik actually knew about the release and that she believed all three defendants were intended to be covered by it. They argue that this "actual notice" relieves them of the necessity of proving that the release met the requirements of the fair notice doctrine.

■ While actual notice may serve as a substitute for conspicuousness, it may not serve as a substitute for express negligence. Appellees rely on case law stating that, if there is actual notice, a party need not prove fair notice. *See, e.g., Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex.2004) (citing *Cate v. Dover Corp.*, 790 S.W.2d 559, 561 (Tex.1990)). However, we have found no case, including those cited, that has ever applied actual notice outside the context of the conspicuousness prong, much less to release or indemnify parties not listed in the four corners of the release. Neither have we found a case allowing one party's subjective understanding of a release to revise the scope of the release. Actual notice has been applied to determine only whether or not the party was on actual notice that a contract contained a release. We know of no example, and appellees cite none, in which a court has allowed extrinsic evidence of actual notice for any purpose other than conspicuousness. Indeed, as we explain, such an approach would fly in the face of our contract interpretation jurisprudence.

■ At its heart, this release was a contract. As such, we use familiar contract principles to construe it. To hold that "actual notice," or a statement of one party's subjective reading of a contract, can determine the meaning of contract terms would eliminate the purpose behind

rules of contract construction. That purpose is, among other things, predictability and certainty. Appellees' approach would, essentially, allow parol and other extrinsic evidence to create an ambiguity in the terms of a contract, and then clarify that ambiguity favorably to the indemnitee.[1]

Generally, contract law does not allow extrinsic evidence to create an ambiguity. *See Sun Oil Co. (Delaware) v. Madeley*, 626 S.W.2d 726, 732 (Tex.1982) (stating the rule that when a contract is so worded that we can give it a definite, legal meaning or interpretation it is not ambiguous and parol evidence is not admissible to render a contract ambiguous); *see also Zurich Am. Ins. Co. v. Hunt Petroleum (AEC), Inc.*, 157 S.W.3d 462, 465 (Tex. App.-Houston [14th Dist.] 2004, no pet.) ("The parties' interpretation of a contract is parol evidence, and parol evidence is not admissible to create an ambiguity."). Appellees rely on one statement from Sydlik during her deposition in which she states she thought she was releasing anyone "involved with the design, construction, or the equipment at the Curves for Women[.]" Yet that is no more than parol evidence from one of the parties to define the terms of an otherwise unambiguous contractual term. Sydlik's interpretation is unimportant when we may construe the contract without that interpretation. Certainly, had she stated she did not believe she had released anyone from liability, appellees would not put such stock in her view. Holding to our traditional rules of interpretation for pre-injury releases, we turn now to determine what claims and parties were released within the four corners of the contract.

### b. Claims Released

As we have explained already, to satisfy the express negligence prong, the release must mention all claims it purports to release. Sydlik relies on certain cases to argue that the language in the release is not specific enough. *See Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex.1987) (holding that indemnification provision did not expressly state the party was seeking indemnity for its own negligence so as to satisfy express negligence test); *Victoria Bank & Trust Co.*, 811 S.W.2d at 938–39 (determining that a settlement release did not mention the specific claims raised and so they were not discharged); *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 869 (Tex.App.-Austin 2001, pet. denied) (ruling that because a release did not specifically mention negligent misrepresentation or fraud, those claims were not released). However, we find the circumstances different in those cases from the circumstances here. Those cases all involved clauses that did not adequately list the causes of action or subject matter to be released, and were simply too general to be applied under those circumstances. That is not the situation with this release.

This release clearly states that Sydlik is releasing the named parties from various potential claims, including negligence causing injury arising out of her use of machinery. The provision reads in part, "I do hereby waive, release, and forever discharge Curves International, Inc., Curves for Women® ... from any and all responsibilities or liabilities from injuries or damages arriving [sic] out of or connected with ... my participation in all activities, my use of equipment or machinery ... including negligence by Curves® representatives." Certainly, the clause encompasses the protections clearly afforded by the contract so that through "actual notice" either more entities or more actions were covered.

---

1. For all practical purposes, parties would not rely on actual notice—they would have no need to rely on it—unless the notice expanded

many claims. Yet Sydlik has cited no authority to say that a release may release only a small number of claims. The rule is only that it must mention the specific claims and subject matter to be released. This provision does just that. Sydlik's injuries allegedly arose out of her use of machinery and she brings claims based in negligence. Those claims are mentioned in the release and it is enforceable as to Sydlik's claims. However, that does not end our inquiry, for we still must determine which entities were released.

### c. Entities the Provision Releases

■■■■ As we have already discussed, appellees ask us to hold, based upon Sydlik's deposition statement, that Sydlik released all three appellees. However, as we have explained, we will not use parol evidence, or a party's subjective belief, to construe an otherwise unambiguous agreement. We examine the language of the provision to effectuate the parties intent based upon the language they used. *See Sun Oil*, 626 S.W.2d at 727–28. Because the contract can be given a certain, definite legal meaning, it is not ambiguous. *See Zurich Am. Ins. Co.*, 157 S.W.3d at 465. The relevant language in this contract states:

> I do hereby waive, release and forever discharge *Curves International, Inc., Curves for Women® and their officers, agents, employees, representatives, executors, and all others (Curves® representatives)* from any and all responsibilities or liabilities … connected with my attendance at *Curves for Women®*, my participation in all activities, my use of equipment or machinery, or any act or

omission, including negligence by *Curves® representatives.*

(Emphasis added). The italicized language is clear as to whom is released: Curves International, the Designer, Curves for Women, the Club, and their representatives.[2] However, Ecological Services, Inc., the Manufacturer, is not released. It is not named in the release. The negligence claims released concern only those related to Sydlik's participation in the activities and use of equipment or machinery. The release does not address the design or construction of any machinery. "Unless a party is named in a release, he is not released." *McMillen v. Klingensmith*, 467 S.W.2d 193, 196 (Tex. 1971). The language, by its express terms, releases only the Club and the Designer. It does not release the Manufacturer either by name or subject matter.

### 3. Pre–versus–Post–injury Releases

■■■ In a different line of argument, appellees argue a release mentioning general subject matter is enough to release any and all claims even marginally related to that subject matter. Appellees contend that because the clause releases liability "from injuries or damages arriving [sic] out of or connected with [Sydlik's] attendance" it necessarily includes any and all claims resulting from an injury connected with Sydlik's attendance at the gym—in essence all of Sydlik's claims in this case. As support, appellees cite *Memorial Medical Center of East Texas v. Keszler*, 943 S.W.2d 433, 435 (Tex.1997) (per curiam) (holding that a release covering all claims relating to Keszler's relationship with the hospital was enough to release claims arising out of exposure to hazardous materi-

---

**2.** We disagree with Sydlik that the release does not mention REEIII d/b/a Curves for Women. Although the suit was brought against REEIII, the release clearly lists two Curves entities: (1) Curves for Women, and

(2) Curves International. The first reference, especially when read in light of the entire clause, references the Club, while the second references the Designer.

als). Appellees fail to address two problems with its argument: (1) *Memorial Medical Center* involved a release after the subject matter of litigation arose; and (2) that case did not eliminate the requirement of specifically mentioning each released tortfeasor.

 Texas courts treat settlements of litigation differently from pre-injury releases. *Memorial Medical Center* highlights this point. In that case, the supreme court specifically stated that while pre-accident waivers of gross negligence are against public policy, post-accident releases are not. *Id.* The reason should be obvious: we want to encourage settlement of existing claims. However, when no litigation is ripe or pending, we read releases more narrowly because releases and indemnity agreements before an injury occurs involve different policy concerns. It is for that reason, as we have explained, the supreme court established the fair notice requirements—so that indemnitors do not inadvertently release claims. We therefore disagree with appellees that the waiver in this case may be read so broadly to release subject matter and parties not expressly listed in its terms.

The second problem appellees fail to address is that the supreme court has never, in pre or post-injury release cases, abandoned the requirement that those being released must be named. The supreme court said in *Memorial Medical Center*, "[a] tortfeasor can claim the protection of a release only if the release refers to him by name with such descriptive particularity that his identity or his connection with the tortious event is not in doubt." *Id.* We have explained already that the Manufacturer is not mentioned in this release; neither are its manufacturing activities. Appellees' reliance on *Memorial Medical Center* and its reasoning is misplaced.

Enforcing the terms of the contract according to its terms, we hold the trial court erred when it granted summary judgment as to Ecological Services, Inc., the Manufacturer.

### Conclusion

We reverse that part of the judgment dismissing Sydlik's claims against Ecological Services International, Inc. as to all claims. We affirm the other portions of the judgment finding that all claims against REEIII, Inc. and Curves International, Inc. were released.[3]

---

**3.** Although Sydlik's petition was unclear as to the claims for manufacturing and design defects, her brief states that those claims were against Ecological Services International, Inc. only. Based upon that statement, the judgment as to REEIII, Inc. and Curves International, Inc. is final.