Opinion issued April 2, 2015



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00217-CV

———————————

## RUBEN GRIJALVA, Appellant

## V.

## BALLY TOTAL FITNESS CORPORATION, Appellee

On Appeal from the 334th District Court
Harris County, Texas
Trial Court Case No. 2011-42189

## MEMORANDUM OPINION

Appellant, Ruben Grijalva, suffered an injury to his right middle finger while working out at the fitness facility owned by appellee, Bally Total Fitness Corporation ("Bally"). Grijalva sued Bally for various causes of action including breach of contract, negligence, intentional infliction of emotional distress, breach

of warranty, and fraudulent inducement, and Bally moved for traditional and no-evidence summary judgment on all of Grijalva's claims. The trial court granted the summary judgment motion in a general order dismissing Grijalva's claims. Grijalva now appeals, arguing that (1) the trial court erred in granting Bally's motion for summary judgment because Bally did not present any argument addressing the no-evidence portion of its motion at the summary judgment hearing; (2) the waiver and release contained in Bally's records does not bar his negligence claim; (3) Bally had actual or constructive notice that the weight that caused his injury was on the floor; (4) his claim of intentional infliction of emotion distress is supported by his assertion that Bally exhibited extreme and outrageous conduct; (5) Bally breached its contract with him; (6) Bally induced him into a contract that it had no intention of performing; and (7) Bally breached "the common law express warranty."

We affirm.

## Background

Grijalva joined the Bally Total Fitness health club in Humble, Texas in 2008 and signed a five-page Membership Agreement which provided details regarding the cost of his membership. The first page of the Membership Agreement addressed the features and cost of Grijalva's "premier" level membership and the names of the people who were included in his membership plan. At the bottom of

the first page, the agreement stated, "This is Page 1 of 5 of your Contract. Please count these pages." The second page of the Membership Agreement contained additional notices regarding legal rights and obligations, including, approximately one inch above the signature line, the following statement: "WAIVER AND RELEASE. This Contract contains a WAIVER AND RELEASE in Paragraph 1 which applies to you. . . . BY SIGNING BELOW, YOU ACKNOWLEDGE RECEIPT OF A FULLY COMPLETED COPY OF THIS CONTRACT EXECUTED BY BOTH YOU AND THE COMPANY." The Membership Agreement was signed by both Grijalva and a Bally representative on May 3, 2008.

The first paragraph of the third page of the Membership Agreement provided:

> 1. WAIVER AND RELEASE. All Members must sign a Waiver and Release before using any club. You . . . agree that if you are present for any reason, have interaction of any kind with or from anyone else, engage in any physical exercise or activity or use any facility, on club property or elsewhere at a club-sponsored event or program, you do so at your own risk. You assume this risk for all likely and unlikely, reasonably and unreasonably expected experiences or occurrences. . . . You agree . . . to release and discharge us . . . from any and all claims or causes of action arising out of our negligence. This Waiver and Release of liability includes, without limitation, injuries which may occur as a result of (a) your use of any facility or its improper maintenance, (b) your use of any exercise equipment which may malfunction or break, (c) our improper maintenance of any exercise equipment, (d) our negligent instruction or supervision, (e) our negligent hiring or negligent retention of any employee, (f) loss of consortium, (g) your slipping and falling while in any club or on the surrounding premises or (h) first aid, emergency treatment or any other services which are negligently rendered or failed to be rendered

3

by released parties, emergency personnel or Good Samaritans, or our negligently preventing a Good Samaritan from rendering first aid.

YOU ACKNOWLEDGE THAT YOU HAVE CAREFULLY READ THIS WAIVER AND RELEASE AND FULLY UNDERSTAND THAT IT IS A RELEASE OF ALL LIABILITY. IN ADDITION, YOU DO HEREBY WAIVE ANY RIGHT THAT YOU MAY HAVE, BY OR ON BEHALF OF YOURSELF, YOUR SPOUSE OR ANY CHILD (MINOR OR OTHERWISE) TO BRING A LEGAL ACTION OR ASSERT A CLAIM FOR INJURY OR LOSS OF ANY KIND AGAINST US FOR OUR NEGLIGENCE OR ARISING OUT OF OR RELATING TO PARTICIPATION BY YOU, YOUR SPOUSE OR CHILD IN ANY OF THE ACTIVITIES, OR USE OF THE EQUIPMENT, FACILITIES OR SERVICES WE PROVIDE AS DESCRIBED IN THIS PARAGRAPH, OR ON ACCOUNT OF ANY ILLNESS OR ACCIDENT OR DAMAGE TO OR LOSS OF YOUR PERSONAL PROPERTY.

The Membership Agreement contained numerous additional provisions on the remainder of page three and pages four and five addressing cancellation rights, refund provisions, various additional notices as required by law, and further details regarding the nature and timing of payments and the covered members.

Grijalva alleged that he was injured at a Bally location on July 20, 2009, as he was lifting fifty-five pound dumbbells. He noticed another Bally member lifting weights nearby. After Grijalva completed his exercises, he lowered the weights to the floor and his right middle finger was caught between his own weights and the set of weights left on the floor by the other member. Grijalva's finger required reconstructive surgery, and, as of the time of this suit, his finger remained disfigured and not fully functional.

Grijalva sued Bally for premises liability, negligence, intentional infliction of emotional distress, breach of common law warranty, fraudulent inducement, and breach of contract. Grijalva asserted that he was an invitee at the Bally health club when he was working out there on July 20, 2009. He alleged that "[t]here were several weights or dumbbells left around the various benches nearby [the bench where he was lifting weights] that were not returned to their regular and specified rack locations." In particular, Grijalva noticed another Bally member lifting eighty-pound dumbbells at an adjacent bench. Grijalva asserted that after the other Bally member left, the eighty-pound weights either rolled over to his bench or were intentionally left near his bench by the other Bally member. Grijalva stated that he was unaware of the presence of the eighty-pound weights near his bench, and as he dropped his own weights, his right middle finger was smashed between his own dumbbell and the eighty-pound dumbbell that was left in the vicinity of his bench, thereby causing him "severe and debilitating injuries." Grijalva alleged that Bally did not have any employees or agents picking up weights or dumbbells left on the floor and that Bally's employees also failed to summon emergency medical care for him and "instead continued business as usual at the gym, causing [Grijalva's] finger to further deteriorate." Grijalva also asserted that his "finger has been disfigured and he cannot return to his employment as a carpenter."

5

Regarding his premises liability claim, Grijalva asserted that Bally breached its duty to maintain a safe premises for invitees by failing to return the weights to their safe positions in the racks or by failing to make the condition of the premises reasonably safe for him and that this breach proximately caused his injury. Grijalva also argued that the failure to ensure that the dumbbells were returned to their storage locations and to assign employees to monitor the premises and remove weights and dumbbells from the floor constituted general negligence and proximately caused his injuries.

Grijalva also asserted a cause of action for intentional infliction of emotional distress, arguing that Bally failed to assist him "in mitigating the extent of injuries to his finger" by "failing to summon medical assistance immediately." He alleged that Bally's conduct was "wanton and reckless" and "extreme and outrageous" and that he suffered severe emotional distress as a result. He also asserted claims for breach of common law warranty, fraudulent inducement, and breach of contract, based on Bally's alleged failure to keep the gym in a reasonably safe condition. He sought compensatory and exemplary damages.

Bally moved for traditional and no-evidence summary judgment. Bally moved for traditional summary judgment on its affirmative defense that Grijalva waived his right to pursue his negligence claims against Bally by executing a valid waiver and release provision in the Membership Agreement. Bally also argued

6

that Grijalva could not provide any evidence of essential elements of his premises liability, intentional infliction of emotional distress, breach of warranty, breach of contract, and fraudulent inducement claims.

In his response, Grijalva argued that he did not sign a waiver and release in the Membership Agreement. He cited his deposition testimony in which he stated that he did not "speak and write English properly," that the Membership Agreement he was given was "all about the money," and that the waiver was not discussed when he signed the Membership Agreement. He also argued that the waiver did not meet the fair notice requirements because it was not conspicuous, and he argued that the waiver did not meet the express negligence requirement. Grijalva's response also addressed Bally's no-evidence contentions on his premises liability, intentional infliction of emotional distress, breach of contract, fraudulent inducement, and breach of warranty claims. He attached his deposition testimony and an affidavit, a copy of the Membership Agreement, copies of his medical records, the deposition of a Bally employee, Luis Hernandez, the deposition of his cousin who was present at the time of the injury, Noe Sauzo, a list of the Bally members who were present during the time when he was injured, and a copy of a sign asking Bally members to re-rack their weights.

The trial court granted summary judgment, dismissing Grijalva's claims. The order did not identify any particular grounds supporting its grant of summary judgment. This appeal followed.

## Summary Judgment Standard of Review

We review summary judgments de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When a summary judgment order does not specify the grounds on which it was granted, we will affirm the judgment if any one of the theories advanced in the motion is meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

After adequate time for discovery has passed, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim. TEX. R. CIV. P. 166a(i). Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements. *Id.*; *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006).

Traditional summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In reviewing a traditional summary judgment, we must indulge every reasonable inference in favor of the nonmovant,

take all evidence favorable to the nonmovant as true, and resolve any doubts in favor of the nonmovant. *Valence Operating Co.*, 164 S.W.3d at 661.

When a defendant moves for traditional summary judgment, he must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of his affirmative defense, thereby defeating the plaintiff's cause of action. *See Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995) (per curiam); *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

**Bally's Motion for Summary Judgment on Waiver and Release Grounds**

In his second issue, Grijalva challenges Bally's motion for summary judgment on its affirmative defense of waiver and release.

A release operates to extinguish a claim or cause of action and is an absolute bar to the released matter. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). "[R]eleasing 'a party in advance of liability for its own negligence'" constitutes "an extraordinary shifting of risk." *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 193 (Tex. 2004) (quoting *Dresser Indus., Inc.*, 853 S.W.2d at 507); *Akin v. Bally Total Fitness Corp.*, No. 10-05-00280-CV, 2007 WL 475406, at *1 (Tex. App.—Waco Feb. 14, 2007, pet. denied) (mem. op.). Accordingly, to be valid, a release must satisfy the fair notice

9

requirements of the express negligence doctrine and conspicuousness. *See Reyes*, 134 S.W.3d at 192; *Dresser Indus., Inc.*, 853 S.W.2d at 508–09.

The supreme court established the express negligence test to cut through the ambiguity of indemnity agreements. *Sydlik v. REEIII, Inc.*, 195 S.W.3d 329, 333 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *see Dresser Indus., Inc.*, 853 S.W.2d at 507–08. The express negligence test requires that parties seeking to indemnify themselves from their own negligence must express that intent in specific terms. *Dresser Indus., Inc.*, 853 S.W.2d at 508 (holding that release provisions that do not express parties' intent within four corners of document are unenforceable as matter of law); *Sydlik*, 195 S.W.3d at 333. The provision is either clear and enforceable or it is not. *Sydlik*, 195 S.W.3d at 333; *see Dresser Indus., Inc.*, 853 S.W.2d at 508. The supreme court has also held that the release provision must "mention" the claim to be released. *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 938 (Tex. 1991); *Sydlik*, 195 S.W.3d at 333. Any claims not clearly within the release's subject matter are not released, and we narrowly construe general categorical release clauses. *Brady*, 811 S.W.2d at 938; *Sydlik*, 195 S.W.3d at 333.

The requirement of conspicuousness mandates "that something must appear on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *Reyes*, 134 S.W.3d at 192 (quoting *Dresser Indus., Inc.*, 853 S.W.2d

at 508–11 (adopting definition of conspicuous provided in section 1.201 of Business and Commerce Code)); *see also* TEX. BUS. & COM. CODE ANN. § 1.201(b)(10) (Vernon 2006) (defining "conspicuous" as "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it"). "Language may satisfy the conspicuousness requirement by appearing in larger type, contrasting colors, or otherwise calling attention to itself." *Reyes*, 134 S.W.3d at 192 (citing *Littlefield v. Schaefer*, 955 S.W.2d 272, 274–75 (Tex. 1997)); *see Dresser Indus., Inc.*, 853 S.W.2d at 510–11.

Bally moved for summary judgment on Grijalva's negligence claims based on the waiver and release in the Membership Agreement. Grijalva argues that he did not sign a waiver. Grijalva points out that, while he signed the second page of the Membership Agreement, the waiver and release provision is on the third page of the agreement, and he did not sign or initial that particular provision. He also points to his deposition testimony, in which he stated that the waiver and release provision was not discussed at the time he signed the Membership Agreement.

However, Grijalva admits that he signed the Membership Agreement, and the copy of the agreement that he filed with his response to Bally's motion for summary judgment included the waiver and release provision. The Membership Agreement further stated, approximately one inch above Grijalva's signature: "WAIVER AND RELEASE. This Contract contains a WAIVER AND RELEASE

11

in Paragraph 1 which applies to you. . . . BY SIGNING BELOW, YOU ACKNOWLEDGE RECEIPT OF A FULLY COMPLETED COPY OF THIS CONTRACT EXECUTED BY BOTH YOU AND THE COMPANY." Thus, the evidence presented by Grijalva indicates that he signed the Membership Agreement containing the waiver and release. Grijalva points to no authority, nor could we find any, providing that the waiver and release provision must be signed or initialed separately from the remainder of the agreement or that it must be discussed to be enforceable, so long as it meets the fair notice requirements discussed below.

Grijalva also argues that the waiver and release provision in the Membership Agreement did not meet the fair notice requirements of conspicuously and expressly mentioning that claims for negligence were released. We disagree.

As discussed above, the Membership Agreement stated, approximately one inch above Grijalva's signature, in capital letters and bold typeface, that the agreement contained a waiver and release provision that applied to Grijalva. The specific terms of the waiver were set out at the top of the next page, identified in all capital letters and in bold typeface by the heading "WAIVER AND RELEASE." The heading and portions of the waiver clause itself appeared in all capital letters and in bold typeface. *See Reyes*, 134 S.W.3d at 192 ("Language may

12

satisfy the conspicuousness requirement by appearing in larger type, contrasting colors, or otherwise calling attention to itself.").

Thus, the waiver here "appear[ed] on the face of the [contract] to attract the attention of a reasonable person when he looks at it." *See id.* We conclude that the waiver and release provision in the Membership Agreement was conspicuous. *See id.*; *see also Akin*, 2007 WL 475406, at *2 (concluding health club's release clause was conspicuous when release language appeared in larger, bold type, was enclosed by box, and was expressly referenced by paragraph number just above signature line).

Grijalva further argues that the "express negligence" requirement was not met because the waiver did not specifically mention waiver of claims arising from weights left on the floor. However, the wavier did expressly state, "You agree . . . to release and discharge us . . . from any and all claims or causes of action arising out of our negligence," and it provided a non-exclusive list of specific injuries that may occur as a result of:

> (a) your use of any facility or its improper maintenance, (b) your use of any exercise equipment which may malfunction or break, (c) our improper maintenance of any exercise equipment, (d) our negligent instruction or supervision, (e) our negligent hiring or negligent retention of any employee, (f) loss of consortium, (g) your slipping and falling while in any club or on the surrounding premises or (h) first aid, emergency treatment or any other services which are negligently rendered or failed to be rendered by released parties, emergency personnel or Good Samaritans, or our negligently preventing a Good Samaritan from rendering first aid.

13

The waiver and release thus expressed the parties' intent to release Bally from its negligence in specific terms. *See Dresser Indus., Inc.*, 853 S.W.2d at 508; *Sydlik*, 195 S.W.3d at 333. The release "mentioned" the specific claims to be released, including any injury arising from Grijalva's use of the facility and exercise equipment, any improper maintenance of the facility or the exercise equipment, negligent supervision, and negligent services rendered or failed to be rendered. *See Brady*, 811 S.W.2d at 938; *Sydlik*, 195 S.W.3d at 333. This waiver corresponds to Grijalva's negligence and premises liability causes of action, in which he alleged that Bally was negligent in failing to maintain a safe premises for him by failing to return the dumbbells or weights to their safe positions in the racks, by failing to make the condition of the premises reasonably safe for him, and by failing to assign employees to monitor the premises and remove weights and dumbbells from the floor.

We conclude that Bally established its right to summary judgment on its affirmative defense of waiver and release as a matter of law, and the trial court did not err in granting summary judgment on Grijalva's negligence and premises liability claims.

We overrule Grijalva's first issue.

14

**Bally's No-evidence Motion for Summary Judgment**

In his first issue, Grijalva complains that the trial court erred in granting summary judgment on Bally's motion for traditional and no-evidence summary judgment "without clearly delineating which standard was applied to arrive at the judgment granted." Grijalva argues that Bally did not specifically or "tangentially" argue the no-evidence portion of its motion at the summary judgment hearing.

The trial court was not required to state in its order the basis for granting Bally's motion for summary judgment. *See Joe*, 145 S.W.3d at 157 (holding that we must affirm summary judgment if any one theory advanced in motion for summary judgment is meritorious); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004) (providing that when party has filed traditional and no-evidence summary judgment motion and trial court's order does not specify which motion was granted, we typically first review summary judgment under no-evidence standard). Nor was Bally required to raise arguments relating to its no-evidence motion at the hearing in order for the trial court to consider the no-evidence portion of Bally's motion. *See* TEX. R. CIV. P. 166a(i) (requiring only that motion be written).

Grijalva also argues that Bally's no-evidence motion for summary judgment did not clearly delineate one or more elements of a claim on which he could not prevail except regarding his fraudulent inducement claim. Thus, he argues that

15

Bally's entire motion should have been treated as a traditional motion for summary judgment. However, Bally's motion for summary judgment did assert various grounds for granting a no-evidence summary judgment, which we discuss in more detail below.

We overrule Grijalva's first issue.[1]

## A.      Grijalva's Intentional Infliction of Emotional Distress Claim

In his fourth issue, Grijalva argues that his intentional infliction of emotion distress ("IIED") claim is supported by his assertion that Bally exhibited intentional, extreme, and outrageous conduct in failing to call 9-1-1 or otherwise respond to his finger injury. Bally argued in its motion for summary judgment that Grijalva's IIED claim fails as a matter of law because there is no evidence that Bally acted intentionally or recklessly or with conduct that was extreme and outrageous.

In his deposition testimony, Grijalva testified that after he injured his finger, he went to speak with a Bally employee and had to wait approximately twenty-five minutes. Grijalva stated that the employee asked if he wanted Bally to call an ambulance. Grijalva told him no, explaining that his cousin, who was also

---

[1]      In his third issue, Grijalva argues that Bally had actual or constructive notice that the weight that caused his injury was on the floor. However, because we have held that Bally has established that Grijalva waived his negligence and premises liability claims, we need not address these arguments. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004) (holding that we will affirm judgment if any one theory advanced in summary judgment motion is meritorious).

working out at the fitness center, was going to drive him to the hospital. Grijalva further testified that the hospital was approximately five minutes from the gym and that his cousin took him to the emergency room where he was treated for the injury to his finger.

Grijalva argues that Bally's failure to call 9-1-1 immediately, which subjected him to unbearable pain without medical assistance, was intentional, extreme, and outrageous. "To recover damages for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Hoffmann–LaRoche Inc. v. Zeltwanger*, 144 S.W.3d 438, 445 (Tex. 2004).

Bally argues that Grijalva offered no evidence that its conduct was extreme or outrageous, and we agree. To establish that the defendant's conduct was extreme and outrageous, the plaintiff must prove that the defendant's conduct was "beyond all possible bounds of decency" and "utterly intolerable in a civilized community." *Id.* (quoting *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993)). Even conduct that is tortious or otherwise wrongful, without more, is not "extreme and outrageous." *Bradford v. Vento*, 48 S.W.3d 749, 758 (Tex. 2001). Likewise, "insensitive or even rude" behavior generally does not constitute extreme and

17

outrageous conduct. *GTE Sw., Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999). It is for the court to determine as a threshold question whether a defendant's conduct was extreme and outrageous. *See Bradford*, 48 S.W.3d at 758 ("Whether a defendant's conduct is 'extreme and outrageous' is a question of law."). Moreover, Texas law generally imposes "no duty to take action to prevent harm to others absent special relationships or circumstances." *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000); *see also Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 818 (Tex. 2005) (holding that IIED claims "cannot be used to 'circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines'" and that "[t]his tort was never intended as an easier and broader way to pursue claims already protected by our expanding civil and criminal laws") (quoting *Zeltwanger*, 144 S.W.3d at 447).

Here, the Bally employee offered to call an ambulance approximately twenty-five minutes after the injury to Grijalva's finger, but Grijalva refused and told the employee that his relative would drive him to the hospital. This is not the type of behavior that Texas courts have found extreme and outrageous. *See Zeltwanger*, 144 S.W.3d at 445 (holding that defendant's actions must be "beyond all possible bounds of decency" and "utterly intolerable in a civilized society" to establish extreme and outrageous conduct for IIED claims); *see also, e.g.*, *Morgan v. Anthony*, 27 S.W.3d 928, 930–31 (Tex. 2000) (holding that defendant's conduct

18

in sexually propositioning stranded motorist and continuing to harass her on highway, in spite of her repeated requests that he leave her alone, by blocking her access to shoulder, pulling over in front of her, stopping, and requiring her to pass on multiple occasions, constituted extreme and outrageous conduct); *Montemayor v. Ortiz*, 208 S.W.3d 627, 656 (Tex. App.—Corpus Christi 2006, pet. denied) (illustrations of extreme and outrageous conduct include "a practical joke suggesting another's spouse has been severely injured in an accident"; "a private detective presenting himself as a police officer and threatening arrest . . . unless certain letters [were] surrendered"; or "a school principal accusing a student of immoral conduct, bullying her for an hour, and then threatening prison and public disgrace"); *Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 81–82 (Tex. App.—El Paso 1998, pet. denied) (holding that general pattern of harassing behavior, including name calling, foul language, threats to make plaintiff's life miserable, and bomb and death threats, constituted extreme and outrageous behavior that could give rise to IIED claim).

Grijalva further complains that Bally's intentional or reckless delay in asking whether he needed an ambulance caused him to endure additional pain and suffering. To establish that the defendant acted intentionally or recklessly in the IIED context, the plaintiff must prove that "severe emotional distress" was "the intended consequence or primary risk" of the defendant's actions. *Vaughn v.*

*Drennon*, 372 S.W.3d 726, 732 (Tex. App.—Tyler 2012, no pet.) (quoting *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 67 (Tex. 1998)). Grijalva, however, failed to provide any evidence that "severe emotional distress" was "the intended consequence or primary risk" of Bally's actions. *See Johnson*, 985 S.W.2d at 67; *Vaughn*, 372 S.W.3d at 732.

We conclude that the only evidence Grijalva provided to support his IIED claim does not establish that Bally's conduct was extreme and outrageous or that it intentionally or recklessly caused severe emotional distress, and the trial court did not err in granting Bally's no-evidence motion on this ground.

We overrule Grijalva's fourth issue.

**B.      Grijalva's Breach of Contract, Breach of Warranty, and Fraudulent Inducement Claims**

In his fifth issue, Grijalva argues that Bally breached its contract with him because it failed to keep the premises safe for his use. He argues that a promise to keep the premises safe for his use was contained in, or at least implied in, the Membership Agreement. Bally, however, argues that Grijalva presented no-evidence of an essential element of his breach of contract claim because the provisions that he claims Bally breached do not exist in the contract.

Once Bally asserted that Grijalva could provide no evidence of the existence of an agreement to keep the premises safe, Grijalva bore the burden to adduce evidence raising a genuine issue of material fact regarding the existence and breach

20

of a term of the contract. See *Mack Trucks, Inc.*, 206 S.W.3d at 582. The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

Grijalva claims that Bally breached the Membership Agreement by failing to keep the premises safe. But he cannot rely on an alleged breach of a promise outside of the written contract to raise a fact issue on breach. *See Zatorski v. USAA Tex. Lloyd's Co.*, No 01-13-01002-CV, 2015 WL 456474, at *4 (Tex. App.—Houston [1st Dist.] Feb. 3, 2015, no pet. h.) (citing *Osborne v. Coldwell Banker United Realtors*, No. 01-01-00463-CV, 2002 WL 1480894, at *8 (Tex. App.—Houston [1st Dist.] July 11, 2002, no pet.) (mem. op)). Grijalva did not identify any provision contained in the agreement that Bally breached. *See id.* Accordingly, summary judgment on Grijalva's breach of contract claim was proper. *See Mack Trucks, Inc.*, 206 S.W.3d at 582.

We overrule Grijalva's fifth issue.

In his sixth issue, Grijalva argues that Bally fraudulently induced him to enter into the Membership Agreement by making a representation it had no intention of performing, namely a representation that it would keep the premises

safe. He also argues that Bally fraudulently induced him to sign the Membership Agreement by failing to disclose the contents of the contract and failing to discuss the waiver and release provision. In his seventh issue, Grijalva argues that Bally breached the common law express warranty when it made representations about the quality and safety of its facilities that it failed to meet. Bally argued that no-evidence summary judgment was proper on Grijalva's fraudulent inducement and breach of warranty claims because Grijalva admits that Bally did not make any representations as to the maintenance of the premises.

Grijalva failed to bring forth any evidence of the alleged fraudulent misrepresentation that Bally would keep the gym in a reasonably safe condition. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (holding that elements of fraud include making material representation that was false). Likewise, Grijalva also failed to bring forth any evidence that Bally made a representation to Grijalva regarding the quality or characteristics of the services offered by Bally, as required to prevail on his claim for breach of a common-law express warranty. *See Methodist Hosp. v. Zurich Am. Ins. Co.*, 329 S.W.3d 510, 527 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) (holding in part that to prevail on claim for breach of express warranty, plaintiff must establish that defendant sold services to plaintiff and made

representation to plaintiff about characteristics of services by affirmation of fact, promise, or description).

Grijalva points only to the Membership Agreement. However, we have already concluded that the Membership Agreement contained a conspicuous waiver and release expressly stating that Grijalva used the facilities at his own risk and releasing any negligence claims relating to maintenance of the facility or equipment. Grijalva's own statements in his deposition and his arguments in his brief on appeal indicate that he was aware that Bally's general policy was that gym members were responsible for returning the weights they used and that gym members often failed to return their weights to the storage racks.

Thus, we conclude that Grijalva failed to produce evidence on at least one essential element of his breach of express warranty and fraudulent inducement claims. The trial court did not err in granting Bally's no-evidence motion on these claims.

We overrule Grijalva's sixth and seventh issues.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Massengale.