

# COURT OF APPEALS
# EIGHTH DISTRICT OF TEXAS
# EL PASO, TEXAS

---

No. 08-24-00313-CV

---

Cynthia Vela and Joel Vela, Individually and as
Co-Representatives of the Estate of Honesty Vela, Appellants

v.

GEC Transport Solutions, LLC, Appellee

---

On Appeal from the 83rd District Court
Pecos County, Texas
Trial Court No. P-8538-83-CV

---

## MEMORANDUM OPINION

This case involves a one-vehicle crash in which truck driver Ricky Barrera and his passenger, Honesty Vela (Honesty)[1], died. Appellants Cynthia Vela and Joel Vela (the Velas), individually and as co-representatives of the estate of Vela, their daughter, filed this wrongful-death suit against Appellee GEC Transport Solutions, LLC, which owned the vehicle and employed Barrera. The trial court granted GEC's traditional motion for summary judgment based on its affirmative defenses of release and quasi-estoppel. We reverse and remand to the trial court.

---

[1] We refer to the decedent by her first name to avoid confusion because the Appellants share the same last name.

# I. FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 2022, Barrera, a truck driver employed by GEC, was driving one of its tractor-trailers on I-10 near Fort Stockton, Texas. Honesty was accompanying Barrera. While approaching an overpass,[2] the vehicle veered left into a guardrail. According to the crash report, the vehicle "experienced a blown left front tire and lost control[,] causing [it] to collide with [the] guardrail"; it then "struck a concrete barrier . . . , causing [it] to skid along the top of the barrier . . . before falling off . . . [the] barrier[,] causing [it] to land upside down before catching fire." Both Barrera and Honesty died in the crash.

The Velas filed a wrongful-death negligence suit against GEC, alleging that "[f]or some unknown reason, the truck was driven at a high speed into a guard rail[.]" In their live pleading, the Velas assert claims for negligence, negligence per se, and gross negligence, alleging that the crash was caused by misaligned front tires:

> At the time of this horrific crash, the front steering tires were extremely misaligned. The misalignment allowed for aggressive tire wear—to the extent that it compromised the structural integrity of both steer tires. The structurally compromised left steer tire resulted in a tread delamination and blowout causing the truck to veer left and cause the crash.

In its live pleading, GEC asserts a general denial and various defenses and affirmative defenses, including release and quasi-estoppel.

GEC filed two motions for summary judgment: (1) a traditional motion based on release and quasi-estoppel, and (2) a no-evidence and traditional motion based on [the Velas'] causes of action. In its first motion, GEC argued that the Velas' claims are barred by release and quasi-estoppel because it is undisputed that before embarking on the trip at issue, Barrera submitted to GEC a completed Passenger Authorization Form for Honesty to accompany him; the form included a general release of GEC and its agents from any claims, demands, or damages; as a result of the

---

[2] The overpass is located at mile marker 256, where I-10 crosses over North Cedar Street.

form, Honesty was added to GEC's Blanket Accident Policy with AIG; and after Honesty died in the crash, the Velas accepted benefits under the AIG policy. In its second motion, GEC argued that the Velas "either have no evidence in support of their claims, or the evidence conclusively negates essential elements of [their] claims." After a hearing, the trial court granted the first motion. The parties disagree on whether the trial court denied certain subparts of the second motion or instead did not rule on these matters because the subparts or underlying claims were withdrawn or abandoned. The Velas filed this appeal and GEC filed a cross-appeal.

## II. ISSUES ON APPEAL

On appeal, the Velas raise three issues: (1) whether GEC "establish[ed] as a matter of law that the pre-injury release was an enforceable legal agreement[,]" i.e., that Honesty signed it; (2) whether "the pre-[injury] release . . . compl[ied] with Texas law," i.e., met "fair notice" requirements; and (3) whether GEC "prove[d] . . . that [the Velas] were estopped from challenging the authorization form's validity [i.e., the validity of Vela's signature] based on their acceptance of . . . benefits [under the AIG policy]."

In its cross-appeal, GEC argues that even if the trial court's take-nothing summary judgment cannot be upheld based on release or estoppel, it should be upheld because the Velas "failed to come forward with legally sufficient evidence to support [their] negligent maintenance claim against GEC . . . [or their] negligence claim against Ricky Barrera."

## III. STANDARD OF REVIEW AND APPLICABLE LAW

A party filing a traditional motion for summary judgment has the burden to submit sufficient evidence to establish on its face that "there is no genuine issue as to any material fact" and that the movant is "entitled to judgment as a matter of law." *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (citing Tex. R. Civ. P. 166a(c)). That is, the movant "must conclusively prove every essential element of his claim or defense[.]" *George*

3

*Fleming and Fleming & Associates, L.L.P. v. Wilson*, 694 S.W.3d 186, 190 (Tex. 2024). If the movant meets this burden, the burden shifts to the nonmovant to negate or raise an issue of fact as to at least one of those elements. *Amedisys*, 437 S.W.3d at 511. A party filing a no-evidence motion for summary judgment must specify the elements being challenged; the burden then shifts to the nonmovant to present evidence raising a fact issue on those elements. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581–82 (Tex. 2006).

We review the granting of summary judgment de novo; in doing so, "we take as true all evidence favorable to the nonmovant and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018).

## IV. THE VELAS' ISSUES ON APPEAL

We begin with the Velas' second issue, i.e., whether the release in GEC's Passenger Authorization Form met the "fair notice" requirements imposed under Texas law. The Velas argue the release did not provide fair notice because it neither stated it was intended to relieve GEC of liability for its own negligence nor was conspicuous.

A release is "an agreement or contract in which one party agrees that a duty or obligation owed by the other party is discharged immediately on the occurrence of a condition." *Kalyanaram v. Burck*, 225 S.W.3d 291, 297 (Tex. App.—El Paso 2006, no pet.) (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Insurance Co. of N. Am.*, 955 S.W.2d 120, 127 (Tex. App.—Houston [14th Dist.] 1997), *aff'd sub nom. Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 20 S.W.3d 692 (Tex. 2000)). A release "extinguishes a cause of action and bars recovery on the released matter." *Id.* (citing *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993)). Release is an affirmative defense. *Dresser*, 853 S.W.2d at 508 (citing Tex. R. Civ. P. 94).

4

Release of a party from liability for its own future negligence involves "an extraordinary shifting of risk." *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 193 (Tex. 2004). To be enforceable, such a release must satisfy the two prongs of the "fair notice" requirements. *Id*. The first prong is the express negligence rule, which provides that the intent to release a party from its own future negligence "must be specifically stated in the four corners of the contract." *Id*.; *see also Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 707–08 (Tex. 1987) (noting that the purpose of the express negligence rule is to address misleading clauses in which "[t]he intent of the scrivener[] is to indemnify the indemnitee for its negligence, yet be just ambiguous enough to conceal that intent from the indemnitor"); *Littlefield v. Schaefer*, 955 S.W.2d 272, 274 (Tex. 1997) ("[A] party's intent to be released from all liability caused by its own future negligence must be expressed in unambiguous terms within the four corners of the contract.").

The second prong of the fair notice requirement is the conspicuousness component, which requires "that something must appear on the face of the [contract] to attract the attention of a reasonable person" to the release. *Reyes*, 134 S.W.3d at 192. This prong may be satisfied when the release language appears in larger type, capital letters, contrasting colors, or otherwise "call[s] attention to itself." *Id*.; *see also Dresser*, 853 S.W.2d at 511 (adopting Tex. Bus. & Com. Code § 1.201(b)(10)'s conspicuousness standard for purposes of the express negligence rule).[3] Whether

---

[3] Texas Business and Commerce Code § 1.201(b)(10) provides that:

> (10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>
> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

a release complies with the "fair notice" requirements is a question of law. *Dresser*, 853 S.W.2d at 509.

### A. Whether GEC's release comports with the express negligence rule

The GEC release at issue reads as follows:

> I <u>Honesty Vela</u> [handwritten] by my signature hereby release and acquit and forever discharge <u>GEC</u> [handwritten] and their agents, representatives, and all other persons of any claims, demands, and damages of any kind, known or unknown resulting in personal injury, death or property damage arising from any accident or incident while an[] occupant in any vehicle owned or contracted to <u>GEC</u> [handwritten].

The Velas argue that GEC's release did not satisfy the express negligence rule because "nowhere does it mention the word *negligence*, much less specifically state that it is releasing GEC of liability for its *own negligent* acts." (emphasis in original). That is, according to the Velas, the language in GEC's release is "too broad and unspecific to satisfy the express negligence rule[.]" *See id.* at 508 ("[A] party seeking indemnity from the consequences of that party's own negligence must express that intent in specific terms within the four corners of the contract."); *id*. at 509 (holding that same rule applies to releases); *Littlefield*, 955 S.W.2d at 274 ("[A] party's intent to be released from all liability caused by its own future negligence must be expressed in unambiguous terms within the four corners of the contract.").

GEC does not dispute that its release does not specifically state that GEC is being released from liability for its own future negligence. Instead, GEC argues that such language is unnecessary, citing our opinion in *Green v. Lajitas Capital Partners, LLC*, which noted that "to satisfy the express negligence requirement, a release agreement need only 'mention' that it is intended to cover a party's acts of negligence," and "the rule does not necessarily require use of the word 'negligence' for the claim to be 'mentioned'; it is enough if the parties' intent to be released for a negligence claim is otherwise clear from the language used." No. 08-22-00175-CV, 2023 WL

6

3153644, at *8 (Tex. App.—El Paso Apr. 28, 2023, no pet.).

However, the release at issue in *Green* in fact specifically stated that the releasees were being released from liability for their own future negligence:

> LIABILITY RELEASE: I/WE AGREE THAT: In consideration and as a condition of THIS STABLE allowing me . . . participation in this activity, under the terms set forth herein, I for myself . . . DO AGREE TO AND DO HEREBY RELEASE, HOLD HARMLESS, AND DISCHARGE THIS STABLE [and various Lajitas entities referred to as the "RELEASEES"] of and from any and all claims, demands, causes of action and legal liability, whether the same be known or unknown, anticipated or unanticipated, whether based in contract, in tort or otherwise, DUE TO THIS STABLE'S AND/OR THE RELEASEE'S NEGLIGENCE, ACTS OR OMISSIONS OR LEGAL LIABILITY, for any economic and/or non-economic losses due to bodily injury and/or death . . . sustained by me . . . in relation to the premises and operations of THIS STABLE, to include while riding . . . whether on or off the premises of THIS STABLE.

*Green*, 2023 WL 3153644, at *4.

Because the foregoing release expressly encompassed liability for the releasees' own negligence, in *Green* we did not consider what kind of wording might satisfy the express negligence rule without using the word "negligence," i.e., how it might otherwise be made clear that liability for the releasees' own negligence is being released.

GEC further cites *Sydlik v. REEIII, Inc.* for the proposition that "[t]he [express negligence] rule is only that [a release] must mention the specific claims and subject matter to be released." 195 S.W.3d 329, 335 (Tex. App.—Houston [14th Dist.] 2006, no pet.). But the release in *Sydlik*, like the release in *Green*, expressly encompassed liability for the releasees' own negligence:

> In consideration of being allowed to participate in the activities and programs of Curves for Women® and to use its facilities, equipment and machinery in addition to the payment of any fee or charge, *I do hereby waive, release and forever discharge Curves International Inc.*, Curves for Women®, and their officers, agents, employees, representatives, executors, and all others (Curves® representatives) *from any and all responsibilities, or liabilities, from* injuries or damages arriving [sic] out of or connected with my attendance at Curves for Women®, my participation in all activities, my use of equipment or machinery, or *any act or omission, including negligence by Curves® representatives.*

*Id*. (emphasis added).

GEC's release, in contrast, neither expressly encompasses liability for its own negligence,

nor even mentions negligence or any other specific claim, and instead refers generally to "any claims, demands, and damages of any kind, known or unknown resulting in personal injury, death or property damage."

The only other case GEC cites on this issue is *Texas Eng'g Extension Serv. v. Gifford*, No. 10-11-00242-CV, 2012 WL 851742, at *4 (Tex. App.—Waco Mar. 14, 2012, no pet.), which it discusses in its summary judgment reply. The release in *Gifford*, like GEC's release, did not state that it included liability for the releasees' own negligence or mention any specific claim:

> In consideration for receiving permission to participate in Emergency Response Training, including but not limited to fire and rescue training, on behalf of my agency/organization, I hereby release, indemnify, and covenant not to sue the Texas Engineering Extension Service (TEEX), . . . [and] their officers, agents or employees (Releasees) from any and all liability, claims, costs and causes of action arising out of or related to any property damage or personal injury, including death, that may be sustained by me, while participating in such activity, or while on the premises owned or leased by Releasees.

*Gifford*, 2012 WL 851742, at *2.

We agree with GEC that the release in *Gifford* (encompassing "any and all liability, claims, costs and causes of action arising out of or related to any property damage or personal injury, including death") is similar to GEC's own release (encompassing "any claims, demands, and damages of any kind, known or unknown resulting in personal injury, death or property damage"). But while the Waco Court of Appeals concluded that the release in *Gifford* "ma[de] clear that TEEX intend[ed] to be released from its own negligence," *id*. at 4, it did not explain why.[4] Essentially, TEEX's and GEC's releases encompass "any claims" arising out of "personal injury [or] death." We cannot agree that such language makes it clear that the releasees are being released from liability attributable to their own negligence as well as other causes. Moreover, if the wording

---

[4] Although in *Green* we listed several opinions, including *Gifford*, as examples of cases in which various releases had been found sufficiently specific to satisfy the express negligence rule, we did not examine why the particular language used in *Gifford* satisfied the standard. *See Green*, 2023 WL 3153644, at *9.

8

"any claims . . . resulting in personal injury [or] death" passes the express negligence test, it is difficult to imagine what wording would fail it.

The Texas Supreme Court has recently confirmed that the express negligence rule continues to apply. *See S&B Eng'rs & Constructors, Ltd. v. Scallon Controls, Inc.*, No. 24-0525, 2026 WL 705762, at *4 (Tex. Mar. 13, 2026) ("Parties may contract for comparative indemnity, . . . subject only to the express-negligence doctrine[.]") (citing *Ethyl*, 725 S.W.2d at 708–09); *see also Ethyl*, 725 S.W.2d at 708 (overruling prior cases which held it was "unnecessary for the parties to say, 'in so many words,' they intend to indemnify the indemnitee from liability for its own negligence"). We conclude that GEC's release does not satisfy the express negligence rule.

**B. Whether GEC's release was conspicuous**

Even if GEC's release could be construed to satisfy the express negligence rule, it would still be unenforceable because it is not conspicuous. As the Velas point out, the document containing the release "is entitled only 'PASSENGER AUTHORIZATION FORM,' and states at the outset that it 'constitutes authority' for [Vela] to ride as a passenger[.]" Further, the Velas note, "[t]he release language is not separated by any other heading, nor is it capitalized or in large or bold print[,]" and "[t]here is nothing about the authorization form that . . . would draw a signer's attention to the release's language or its significance."

In addition, the release is located in the middle of the document, with unrelated provisions above and below it. Above the release is language directed "TO WHOM IT MAY CONCERN," setting forth the terms and conditions under which Honesty was authorized to be transported in GEC's vehicle, as well as a clause directed to the driver in which the driver requests insurance coverage for the passenger for "the [driver's] own protection" and in which the driver authorizes payment of the insurance premium through a deduction from the driver's next paycheck. Below the release is a clause relating to payment of the insurance proceeds. Thus, the Velas argue, given that "the

9

release was not set off by any headings, bold print, large print, or other distinguishing characteristic," a reasonable person "could have overlooked its language and assumed they were simply signing a 'Passenger Authorization Form[.]'"

In turn, GEC points out that "the entire release is contained in a single page document, is double spaced, is centered to the page, and contains approximately 150 words," i.e., it is "very brief." Further, GEC notes, "the release requires the releasor to write their name twice within the release portion in addition to signing the release at the bottom of the page."

We are unpersuaded by GEC's arguments. First, while, as GEC notes, *Dresser* indicated that "language in an extremely short document, such as a telegram, is conspicuous[,]" i.e., some contracts are "so short that every term in [them] must be considered conspicuous[,]" 853 S.W.2d at 511, the length of GEC's authorization form—about 150 words—is not comparable to that of a telegram. *See* DAVID HOCHFELDER, THE TELEGRAPH IN AMERICA, 1832–1920, 79 (The John Hopkins University Press 2012) (noting that "most telegrams contained ten or fewer words"). GEC's passenger authorization form is not so short that every term in it must be considered conspicuous. To the contrary, its release language is susceptible to being overlooked, given that it is sandwiched by various unrelated provisions and the document's title—"PASSENGER AUTHORIZATION FORM"—does not signal that a release effecting an extraordinary shifting of risk is included. Second, while GEC's authorization form contains numerous blanks to be completed, there is no indication that passengers would be the ones to fill in the blanks.

We see nothing about GEC's release that would "attract the attention of a reasonable person[.]" *See Reyes*, 134 S.W.3d at 192. Accordingly, we conclude that GEC's release is not conspicuous[.] We sustain the Velas' second issue.

### C. Conclusion

Because we conclude that GEC's release does not satisfy the express negligence or

conspicuousness prongs of the "fair notice" requirements, i.e., it is unenforceable, we need not reach the Velas' first issue (whether GEC established that Honesty signed the release) or their third issue (whether the Velas were estopped from challenging the genuineness of Vela's signature on the release). *See* Tex. R. App. P 47.1 (speaking to "hand[ing] down a written opinion that is as brief as practicable" but addresses what is necessary to finally dispose of the appeal).

## V.  GEC's Issues on Cross-Appeal

Next, we turn to the question of whether the trial court ruled on relevant parts of GEC's no-evidence motion. In its cross-appeal, GEC seeks review of the trial court's "denial" of certain parts of its no-evidence motion for summary judgment, arguing that where a trial court has granted summary judgment on particular grounds (here, release and estoppel), but denied it on other grounds (here, no evidence to support certain claims), the court of appeals "may affirm the judgment on those other grounds if the trial court incorrectly denied the motion [based on such grounds]." In support, GEC cites *Rancho Esperanza, Ltd. v. Marathon Oil Co.*, 488 S.W.3d 354, 363–66 (Tex. App.—El Paso 2015, no pet), in which we reversed both the trial court's summary judgment ruling on standing, which had granted relief, and its ruling on limitations, which had denied relief. In turn, the Velas argue that GEC's cross-appeal should not be entertained, as "the trial court did not consider or rule on [the parts of the no-evidence motion at issue], based on the parties' stipulation that GEC was withdrawing its summary judgment motions related to the Velas' direct and vicarious negligence claims." Thus, as a preliminary matter, we must determine whether GEC's cross-appeal is properly before us.

Several matters were addressed at the trial court hearing at issue. Among them were GEC's objection to Richard Sherman's affidavit and its motion to strike Sherman's testimony. Sherman is the Velas' expert on "inspecting wheels and tires." According to GEC, Sherman's testimony that a particular type of inspection was not timely performed "is the fundamental opinion on which all

11

[of Sherman's] other opinions are . . . based[,] and that[] [testimony is] categorically untrue[.]" In support of its position, GEC cited testimony by a GEC mechanic which, according to GEC, reflected that the mechanic performed the inspection in question. The Velas argued, among other things, that the mechanic performed a lesser, inadequate inspection and that GEC's own alignment records and the condition of the tires supported Sherman's opinion. The trial court denied GEC's objection and motion to strike Sherman's testimony.

Later in the hearing, after returning from a recess, GEC's counsel stated that "[i]n light of the [c]ourt's ruling on [Sherman]'s testimony," GEC would "not be pursuing" its motion for summary judgment as to Barrera's alleged negligence, and confirmed that, except as to gross negligence, the rest of the motion was "gone"[5]:

| [Court]: | We're ready to go. |
|---|---|
| [Downey]: | In light of the Court's ruling on Mr. Sherman's testimony, we will not be pursuing the no evidence []or traditional evidence motion for summary judgement schedule as against the negligence of [Barrera]. It is my understanding that [the Velas'] counsel's about to make a representation . . . that the[y're] withdrawing the negligent Per Se claim, the negligent training claim and the negligent supervision claim as to Barrera. |
| [Kirk]: | That is correct, Your Honor. |
| [Court]: | Okay. You all put it in writing, in an order. |
| [Riley]: | I kind of just wrote withdrawn on the side. |
| [Kirk]: | No, we can put it in a stipulation. |
| [Valadez]: | The judge is asking for us to draft the order. |
| [Downey]: | Yes, just writing withdraw on the side of the summary judgment deal or do you want it? |
| [Valadez]: | The judge will need a different order. I think the judge likes motions in every order separating -- |
| [Court]: | And we're flying by so fast if we can put it in an order. |
| [Downey]: | We'll draft one up after the hearing and send it your way. |
| [Court]: | That helps us a lot. |

_____

[5] In this exchange, GEC was represented by Downey and Riley, and the Velas by Kirk and Valadez.

[Downey]: All right. So on the Traditional and No Evidence Motion For Summary Judgment that leaves us to argue gross negligence.

[Court]: Okay. So the No Evidence, the Traditional Motion For Summary Judgment is gone.

[Downey]: On the basis of the stipulation on negligence Per Se of Barrera, negligent training Barrera[,] negligence supervision of Barrera are gone as well.

[Court]: Okay.

Later, after the trial court addressed another expert challenge, GEC's counsel stated, "[w]e've got one part left of the traditional summary judgment, that's gross negligence." After hearing from both sides, the trial court told GEC's counsel "I'll go with your argument," and GEC's counsel said, "Yeah, I'll write it on there. Gross negligence, granted. There you go," to which the trial court replied, "That's it. . . .Okay. So I'll hand that to the clerk. Yes we ruled on that one."

A copy of the trial court's written order is included as an appendix to this opinion. On the order, each of the listed subparts of GEC's no-evidence and traditional motion for summary judgment is struck through by hand, except gross negligence, which has an "X" on the line next to "GRANTED."

On appeal, GEC offers the following account of the proceedings relating to the order, arguing the trial court "denied" the motion for summary judgment as to Barrera's negligence and GEC's negligent maintenance, while granting the motion as to gross negligence:

> After a short recess, GEC acknowledged that it could not succeed on its no-evidence or traditional motions for summary judgment as to the claims against Barrera, in light of the rulings on Sherman's testimony.[6] [The Velas] abandoned their claims of negligence per se of Barrera, negligent training of Barrera by GEC, and Negligent Supervision of Barrera by GEC. The court denied the motion for summary judgment as to the negligence of Ricky Barrera and as to GEC's alleged negligent maintenance of its vehicles, but granted the traditional motion for summary judgment as to [the Velas'] Gross Negligence claim (record citations omitted).

---

[6] GEC maintains that "[t]he trial court erred in overruling the objections to Sherman's testimony; this error led to the trial court's error in denying the no-evidence motion for summary judgment."

13

In support of its contention that the trial court "denied" the motion in part, GEC cites only the trial court's written order.

As to the written order itself, GEC argues the order reflects that, except as to gross negligence, all subparts of the motion were "denied . . . as evidenced by the strike-throughs":

> The signed order makes plain that the court only granted GEC's No-Evidence and Traditional Motion for Summary Judgment . . . as to [the Velas'] gross negligence claim and denied the remainder of the motion, as evidenced by the strike-throughs on the places for ruling on the motion as to [the Velas'] claims as to Barrera's alleged negligence, Barrera's alleged negligence per se, GEC's alleged negligent training of Barrera, GEC's alleged negligent supervision of Barrera, and GEC's alleged negligent maintenance.

Crucially, however, GEC does not explain why, if the trial court intended to deny each of the motion's subparts except as to gross negligence, it did not simply place an "X" on the line next to "DENIED" in each instance, just as an "X" was placed on the line next to "GRANTED" for the gross negligence subpart.

GEC also argues that (1) as to the claims withdrawn by the Velas, the order "denied the [summary judgment] [m]otion as moot"; and (2) as to the claims of Barrera's negligence and GEC's negligent maintenance, the trial court denied the motion in light of its prior rulings relating to Sherman's testimony:

> [T]aking this order at face value, the trial court denied the Motion as moot as to those claims withdrawn by [the Velas]. Based on the Court's denial of GEC's Motion to Strike Richard Sherman's testimony and the court's overruling of GEC's objection to Sherman's summary judgment affidavit, the trial court denied the Motion as to Barrera's alleged negligence and GEC's alleged negligent maintenance, claims affected by the Court's denial.

However, GEC points to nothing in the record suggesting that the trial court decided to deny as moot—rather than simply not rule on—the subparts of the motion that corresponded to the claims withdrawn by the Velas. Likewise, GEC points to nothing in the record suggesting that the trial court decided to deny on the merits the subparts of the motion relating to Barrera's negligence and GEC's negligent maintenance, rather than simply not rule on these matters after

14

GEC's counsel told the court "we will not be pursuing" the motion as to Barrera's negligence and that, except as to gross negligence, the entire motion was "gone."[7]

In addition, while GEC argues that the trial court "clearly understood that GEC had declined oral argument on the no-evidence motions following the adverse decision on its [challenges to Sherman's testimony]," GEC cites nothing in the record to support its assertion that it declined oral argument.[8]

Finally, GEC argues that the written order "confirms the denial" of all grounds asserted for summary judgment except gross negligence by including a Mother Hubbard clause, i.e., "by expressly stating: 'All relief not herein granted is DENIED.'" While a Mother Hubbard clause may sweep up and deny relief requested in a summary judgment motion but not expressly mentioned in the corresponding order, it will not undo language (or in this case markings) in the order relating to such matters as the parties' abandonment or withdrawal of issues from the court's consideration. *See Lowe v. Teator*, 1 S.W.3d 819, 823 (Tex. App.—Dallas 1999, pet. denied) ("If . . . the language preceding the Mother Hubbard clause is limited in its scope, such that it evidences the intent of the trial court *not* to dispose of all the claims . . . , a Mother Hubbard clause will not convert the otherwise interlocutory summary judgment order into a final judgment" (emphasis in original).).

---

[7] While GEC expressly stated it would "not be pursuing" its motion for summary judgment as to Barrera's negligence, and only implied the motion was "gone" as to negligent maintenance, GEC's cross-appeal cannot succeed based on only one of these issues. That is, even assuming GEC did not withdraw or abandon its motion as to negligent maintenance, its withdrawal or abandonment of the motion as to Barrera's negligence would still leave that aspect of the case unresolved, meaning that a disposition of this cross-appeal favorable to GEC would not provide an alternative ground to sustain a *final* judgment. *See generally Matter of Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021) ("[T]he general rule . . . is that an appeal may be taken only from a final judgment.") (citing *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001)); *see also Rancho Esperanza*, 488 S.W.3d at 363–66 (holding that alternative ground sufficed to support final summary judgment).

[8] On this point, GEC asserts that the trial court "made no 'withdrawal' notation next to its denial of GEC's [m]otion as to [the Velas'] claims for Ricky Barrera's negligence and GEC's negligent maintenance," and "[t]his is because the court clearly understood that GEC had declined oral argument on the no-evidence motions following the adverse decision on its [challenges to Sherman's testimony]." However, again, GEC offers no explanation for why, if the trial court intended to deny GEC's motion as to Barrera's negligence and GEC's negligent maintenance, it did not simply place an "X" on the appropriate lines next to the word "DENIED," rather than striking through the claims, a type of marking which, in relation to three other claims—negligence per se by Barrera, negligent training, and negligent supervision—the order establishes means "withdrawn," not "denied."

15

Litigants "should be able to narrow the issues presented to the trial court provided the agreement is reduced to writing, signed, and filed with papers or 'entered of record.'" *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979) (citing Tex. R. Civ. P. 11). If a party "represents to the court that he waives a ground or objection that he has previously asserted in a written motion or response and agrees that a certain issue is the only issue before the court," Rule 11 is satisfied "if the oral waiver or agreement made in open court is described in the judgment or an order[.]" *Id.* It is sufficient if such a representation is "reflected in the judgment." *Id.*; *see also In Matter of Guardianship of Virgil*, 508 S.W.3d 591, 596 (Tex. App.—El Paso 2016, no pet.) ("The Texas Supreme Court interprets the requirements of Rule 11 quite liberally to conform to modern trial practice.").

Here, the parties stipulated that gross negligence was the only ground to be ruled on by the trial court in relation to GEC's no-evidence and traditional motion for summary judgment, as the Velas withdrew or abandoned their claims regarding negligence per se, negligent training, and negligent supervision, and GEC withdrew or abandoned the subparts of its motion relating to Barrera's negligence and GEC's negligent maintenance. In accordance with these stipulations, the trial court in fact ruled only on gross negligence. These matters are reflected both in the hearing transcript and the trial court's written order.

Accordingly, while GEC seeks to appeal the trial court's "denial" of the subparts of its motion relating to Barrera's negligence and GEC's negligent maintenance, these matters were neither presented to nor ruled on by the trial court and thus there is nothing for us to review. *See* Tex. R. App. P. 33.1 ("As a prerequisite to presenting a complaint for appellate review," the record must show: (1) "the complaint was made to the trial court by a timely request, objection, or motion . . . "; and (2) "the trial court: (A) ruled on the request, objection, or motion, either expressly or implicitly; or (B) refused to rule on the request, objection, or motion, and the complaining party

16

objected to the refusal"). We overrule GEC's cross-issues.

## VI. CONCLUSION

For the reasons stated above, we reverse and remand to the trial court for proceedings consistent with this opinion.

LISA J. SOTO, Justice

May 15, 2026

Before Salas Mendoza, C.J., Palafox, and Soto, JJ.

# Appendix

FILED
At 3:18 O'Clock P M.
Pecos County, Texas

AUG 01 2024

CARLA CUDE
Clerk of District Court
By: Nancy Burns Deputy

CAUSE NO. P-8538-83-CV-a

| | | |
|---|---|---|
| CYNTHIA VELA, INDIVIDUALLY, JOEL VELA, INDIVIDUALLY, AND AS CO-REPRESENTATIVES OF THE ESTATE OF HONESTY VELA | § § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | PECOS COUNTY, TEXAS |
| vs. | § § | |
| GEC TRANSPORT SOLUTIONS, LLC | § § | |
| Defendant. | § | 83rd JUDICIAL DISTRICT |

## ORDER ON DEFENDANT GEC TRANSPORT SOLUTIONS, LLC's NO EVIDENCE AND TRADITIONAL MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S CAUSES OF ACTION

CAME ON THIS DAY _____ TO BE HEARD Defendant GEC

Transport Solutions, LLC's No-Evidence and Traditional Motion for Summary Judgment on

Plaintiff's Causes of Action. Having considered the motion, the response, the reply, the papers on

file with the court and the arguments of counsel, the court hereby rules as follows:

Negligence of Ricky Barrera          _____ GRANTED _____ DENIED

withdrawn Negligence per Se of Barrera          _____ GRANTED _____ DENIED

withdrawn Negligent Training of Barrera by GEC          _____ GRANTED _____ DENIED

withdrawn Negligent Supervision of Barrera by GEC          _____ GRANTED _____ DENIED

Negligence Maintenance by GEC          _____ GRANTED _____ DENIED

Gross Negligence          ____X____ GRANTED _____ DENIED

All claims on which Defendant's Motion for Summary Judgment are GRANTED are hereby

DISMISSED WITH PREJUDICE to refiling the same. All relief not herein granted is DENIED.

To the extent that the court grants relief as to each and every claim, the Plaintiffs' claims are

18

disposed of in their entirety, the Plaintiffs take nothing on their claims, and this JUDGMENT is

FINAL and APPEALABLE

SIGNED THIS DAY, _____8/ / /_____, 2024

_____
**JUDGE PRESIDING**